HARRIS COUNTY, Appellant,

v.

Clara DeWITT, et al., Appellees.

No. A14–92–01306–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 19, 1994.

Rehearing Denied June 23, 1994.

Mike Driscoll, David R. Hurley, Joan M. Denton, Sondra D. Hachem, Houston, for appellant.

Randal A. Kauffman, Houston, for appellees.

Before MURPHY, CANNON, DRAUGHN, SEARS and MORSE (Sitting by Assignment), JJ., en banc.

## OPINION ON REHEARING

ROBERTSON, Justice.

The trial court, under the doctrine of respondeat superior, rendered judgment against Harris County for damages resulting from the deaths of Brenda and Richard Hopkins, Jr. We withdraw our original opinion, substitute the following opinion, reverse the judgment of the trial court, and render judgment that appellees take nothing.

The Highway 6 Roadhouse Cafe hired two off-duty Harris County Deputy Constables as security guards for a charity benefit held on August 1, 1982. One of these constables was J.W. Huckeba. At the end of the shift, as Huckeba was going to get his evening's wages, a person entered the establishment stating he had been in an accident. Huckeba told his colleague to call a wrecker, and Huckeba left the restaurant to investigate. The accident involved a Mazda and a black Thunderbird. The Mazda was pulled off onto the side of the road, but the Thunderbird was stranded in the lane closest to the center turning lane, its back end extending into the other lane of traffic. The driver of the Thunderbird said the car would not start. Huckeba then proceeded both to investigate the accident and take precautionary measures concerning the stranded vehicle. The deputy had only his flashlight with which to work, and he proceeded to use the flashlight to illuminate the wreck and indicate to the occasional light traffic that an obstruction was in the road. Because other people were trying to come onto the highway, the deputy gave his flashlight to the restaurant's manager to continue the directing of traffic so the deputy could attend to other tasks he deemed necessary, namely, preventing other people from crowding the highway. After he turned away, a motorcycle carrying two persons crashed into the Thunderbird. Both the driver and the passenger of the motorcycle died as a result of this crash.

The decedents, Brenda and Richard Hopkins, Jr., were survived by their daughter Candace who brought this suit against both the county and Deputy Huckeba individually for the death of her parents. The alleged acts of negligence committed by Huckeba consisted of his failing to remove the Thunderbird from the highway, failing to turn on the vehicle's lights, giving the flashlight to a layperson to assist in directing traffic, and failing to warn other drivers of the Thunderbird's presence in the roadway. The jury found both the decedent, Richard Hopkins, and the deputy each 50% negligent in causing the accident. The county submitted a motion for judgment notwithstanding the verdict, arguing that the trial court should disregard the jury's findings of negligence as to the deputy because his actions on the night of the accident were discretionary and thus protected by official immunity. The county also argued that because the deputy was not liable, the county could not be liable. The trial court granted the county's motion for judgment notwithstanding the verdict as to the deputy individually but still assessed liability against the county.

The pernicious nature of the Texas Tort Claims Act has been well documented; thus, we do not add to the chorus of pleas to the legislature to clarify the parameters of waivers of sovereign immunity. We merely state the provision at issue in the instant case: "A governmental unit in the state is liable for: ... (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex.Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1986). The legal question before us today asks whether Huckeba's official immunity affects the analysis of the county's liability per the private person language of subsection two. This court, however, has already visited this question in a prior opinion, and we continue to adhere to the legal principle implied in that decision, which principle we today discuss in greater detail.[1] *See City of*

---

1. The Texas Supreme Court has noted that the codified version of the Texas Tort Claims Act does not include the directive contained in the Act's earlier version that the Act be liberally

*Houston v. Newsom*, 858 S.W.2d 14 (Tex. App.—Houston [14th Dist.] 1993, no writ) (stating police officer's immunity means employer remains immune as well); *see also City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex.1993) (stating that city's immunity would apply only if city employee pled and proved his entitlement to qualified or official immunity).

█ Thus, in accordance with our prior opinion in *Newsom*, we hold that as a matter of law the governmental unit cannot be held liable under 101.021(2) when the employee of the governmental unit enjoys official immunity because the "private person" language in this section precludes appellees' interpretation insofar as it applies to the unique policy grounds supporting official immunity for police officers. The unique functions and obligations of a police officer have allowed such employees the benefit of official immunity from suit when their actions are alleged to be negligent, so long as their actions meet the three-prong test established for finding official immunity, those three prongs being the following: acting within the course and scope of their authority; performing discretionary functions; and acting in good faith. *See Bozeman v. Trevino*, 804 S.W.2d 341, 343 (Tex.App.—San Antonio 1991, no writ) (setting out elements of qualified (or official) immunity).

█ At the outset, we address appellees' cross-point because its resolution provides the foundation for the rest of the opinion. Appellees assert that the court erred in finding Huckeba entitled to official immunity. We find appellees' contention in this regard to be contrary to the existing case law. Appellees contend that Huckeba was not entitled to official immunity because his actions on the night of the incident were of a ministerial rather than discretionary nature. Discretionary acts are protected, when they are performed in good faith, because otherwise the quasi-judicial employees exercising them would be less than zealous in performing

their jobs. *See Baker v. Story*, 621 S.W.2d 639, 643–44 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.) (stating public policy behind official immunity for discretionary or quasi-judicial duties). Ministerial acts are those which "the law prescribes and defines to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Commissioner v. Smith*, 5 Tex. 471, 479 (1849). Thus, a significant aspect of the process of determining whether an act is ministerial or discretionary involves searching for a law or regulation controlling the acts of the officer in a particular situation. *See Carpenter v. Barner*, 797 S.W.2d 99, 102 (Tex.App.—Waco 1990, writ denied) (finding no law controlled officer's judgment in determining how to pull over, investigate, and help repair car with broken taillights). In *Carpenter v. Barner*, for example, there was no question that the officer was acting within the scope of his duty and in good faith. The only question before the court was whether the officer's actions were of a discretionary nature. The court held as a matter of law that the following decisions taken by the officer were within his discretion: "whether to stop the [vehicle] on the paved shoulder of the driveway or on the access road, how long the occupants of the vehicle should be detained, whether the occupants should be allowed out of the vehicle, where the vehicles should be positioned on the paved shoulder and in relation to each other, what warning lights or devices should be displayed during the stop and detainment." *Carpenter*, 797 S.W.2d at 102. The vehicle's occupant was injured while attempting to repair the taillight and filed suit against the officer who had pulled him over. The court found the officer officially immune from the lawsuit because of the inherently discretionary nature of the officer's actions. To find otherwise, said the court, would not serve the public interest and "would likely cause other peace officers under similar cir-

construed. *Univ. of Texas Medical Branch v. York*, 871 S.W.2d 175, 177 n. 3 (Tex.1994). The supreme court has stated that the guiding principles for interpreting the Act must now necessarily be those set out in the Code Construction Act. Tex.Gov't Code Ann. § 311.023 (Vernon 1990).

Because the reasoning of our opinion today draws upon public policy concerns and analogous statutory provisions, we acknowledge herein advance that such avenues of interpretation are encouraged by the principles set out in the Code Construction Act.

cumstances to flinch from acting because of the fear of liability." *Id.* at 102.

Similarly, in *Huddleston v. Maurry,* 841 S.W.2d 24 (Tex.App.—Dallas 1992, writ dism'd), the Dallas court of appeals addressed the distinction of a discretionary and ministerial act in assessing an officer's good faith in pursuing a high-speed chase. The court found the officer's pursuit to be in direct conflict with a statute permitting a driver of an emergency vehicle to exceed the speed limit. The statute also read, however, that its provisions permitting the driver to exceed the speed limit would not relieve the driver from his "duty to drive with due regard for the safety of all persons", nor would it "protect the driver from the consequences of his reckless disregard for the safety of others." *Huddleston,* 841 S.W.2d at 29. Although we find this case anomalous in its particular method of addressing the question of official immunity for officers engaging in high-speed chases, the court's use of the statute to find a ministerial act does accurately describe the key distinction between discretionary and ministerial acts.

The distinction was again addressed in the relatively recent case of *Copeland v. Boone,* 866 S.W.2d 55 (Tex.App.—San Antonio 1993, writ granted). In *Copeland,* the court found the act of executing a warrant pursuant to a trial court order was a ministerial act, noting that the mere execution of a warrant differs drastically in substance from a discretionary act such as a police officer exercising his judgment in whether to pursue a suspect for whom the officer has probable cause to arrest. *See id.* at 57 (describing circumstances in *Dent v. City of Dallas* that demonstrated discretionary act). The cases clearly support the trial court's finding Huckeba was entitled to official immunity. Huckeba faced numerous responsibilities and a critical situation on the night of the accident. Appellees have not shown a law or regulation setting out the course of action Huckeba was to take in investigating a vehicular accident, while at the same time attempting to both control the persons entering the highway and make the best of a situation where his resources were limited. Appellees' cross-point is overruled.

■ Having found no error in the trial court's judgment that Huckeba was entitled to official immunity, we turn to the county's main contention that it too was entitled to immunity based on Huckeba's immunity. Section 101.021 of the Texas Tort Claims Act contains two subsections or parts stating three different circumstances in which the sovereign's immunity will be waived. The first part involves negligent acts arising out of the use of motor vehicles. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1988). The second part controls cases of negligence involving real property defects, the premises defect and special defect cases, and, perhaps the most ambiguous of the three, those cases of personal injury or death arising out of a use or condition of tangible personal property. *See Quinn v. Memorial Medical Center,* 764 S.W.2d 915, 917 (Tex.App.—Corpus Christi 1989, no writ) (statute waives sovereign immunity in three situations); Joe R. Greenhill & Thomas V. Murto III, *Governmental Immunity,* 49 TEX.L.REV. 462, 468 (1971) (stating despite extensive exceptions to Act waiver occurs in these three general areas). This section of the Act does not address the interaction of the principle of official immunity and the conditions supporting a waiver of sovereign immunity. A separate section of the Act, however, does state that public employees retain their official or qualified immunity in spite of the Act's limited waiver of sovereign immunity. TEX.CIV. PRAC. & REM.CODE ANN. § 101.026 (Vernon 1986); *see also Copeland,* 866 S.W.2d at 58 (noting Act's retention of employees' common-law official immunity).

■ Appellant's brief is sparse in citing case law directly addressing the legal question before us today. The cases appellant does use to support its position are cases that have applied the motor vehicle section. The cases addressing part one demonstrate what the statutory language makes clear: that there is no separate inquiry into the sovereign's immunity once the employee is found negligent because liability attaches to the sovereign vicariously through the negligence of the employee by virtue of the doctrine of respondeat superior. *E.g., Huddleston v. Maurry,* 841 S.W.2d 24, 30 (Tex.App.—Dallas 1992, no writ); *Carpenter v. Barner,* 797

S.W.2d 99, 102 (Tex.App.—Waco 1990, writ denied); *see also Dent v. City of Dallas,* 729 S.W.2d 114, 117 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (stating only act of negligence found was officer's determination of how and when to arrest; immunity for such discretionary act means city could not be liable under respondeat superior). The second part, however, employs different language in stating the circumstances under which sovereign immunity will be waived. In part two, liability attaches to the sovereign only if a private person in such a situation would be liable. *See, e.g., Salcedo v. El Paso Hospital Dist.,* 659 S.W.2d 30, 33 (Tex.1983) (negligent conduct must involve circumstances warranting private liability); *Sem v. State,* 821 S.W.2d 411, 414 (Tex.App.—Fort Worth 1991, no writ) (inquiring as to whether state were it a private employer would have duty under facts of case).

Although the courts have found a diverse number of situations to encompass a use or condition of tangible personal property, we find little case law encompassing facts analogous to the ones in the instant case in which a police officer has been found to have official immunity. In the cases addressing part two, however, one can readily discern the public policy rationale supporting the Act's existence: that the state can no longer enjoy the disparate treatment of escaping liability for its negligence when other entities in the same field are held accountable. The instances in which we have seen the application of part two involve cases in which the state acts, in effect, as a private employer, such as administering a hospital, a mental institution, or an educational institution. *E.g., Robinson v. Central Texas Mental Health Mental Retardation (MHMR) Center,* 780 S.W.2d 169, 171 (Tex.1989) (finding waiver of sovereign immunity for failure of MHMR employees to provide life preserver to patient known to suffer from epileptic seizures when responsibility of MHMR employees was to see that patients were dressed in appropriate swimming attire); *Salcedo,* 659 S.W.2d at 33 (finding use of electrocardiogram to make diagnosis constituted use of tangible personal property); *Lowe v. Texas Tech University,* 540 S.W.2d 297, 300 (Tex.1976) (finding claim within waiver provision where football coach

ordered player to remove knee brace and player thereafter injured). In these instances, the policy goal behind the Act finds its fulfillment in its inspiring governmental entities to maintain the same kind of safe and efficient services required of comparable providers in the private sector.

No comparable policy is served, however, in the unique employment situation of a police officer. Society has deemed the work of police officers to be of paramount importance to the general good of society, and the price of relegating that work to such high priority has been a compromise known as official immunity. Society allows police officers this immunity because public policy demands that they be able to carry out their duties without fear of personal liability. *Carpenter v. Barner,* 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied). For this reason, peace officers enjoy official immunity from negligence arising out of their acts performed in the line of duty and in good faith. *Dent v. City of Dallas,* 729 S.W.2d 114, 117 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

The circumstances inevitably surrounding cases brought against police officers manifest two competing and equally important public policy concerns. The first and most obvious concern is that of providing the community with vigorous law enforcement through a competent police force. Implicit in this policy concern is the public interest of preserving the safety of the community for whose benefit police officers are bound to provide vigorous law enforcement. These two policy goals meet in acute conflict in those cases in which police officers, in the course of providing vigorous law enforcement, injure innocent third parties. This conflict has been present in a developing line of cases involving third-party injuries from high-speed police chases. *E.g., Travis v. City of Mesquite,* 830 S.W.2d 94 (Tex.1992); *Chambers v. City of Lancaster,* 843 S.W.2d 143 (Tex.App.—Dallas 1992, writ granted).

Although the police chase cases fall under part one, and our decision today draws on part two, we find our decision unavoidably influenced by the identical policy concerns expressed in this line of cases. Many of the

police chase cases reach the appellate level in the summary judgment context, based on a dispute concerning the good faith or reasonableness of the officers' actions that resulted in death or injury to a third party. As those cases indicate, the parameters of the official immunity doctrine provide a significant test that every officer must pass in order to warrant official immunity. Our holding today does not purport to allow police officers free reign in performing their duties; nor does it dispense with demanding of police officers a certain standard of care. A police officer will always be subject to the stringent review of whether he acted in good faith. Given the unique circumstances and public policies circumscribing the work of a police officer, no public policy is served by imposing liability on the police officer's employer once the officer is granted official immunity.

Our decision today, which draws yet another line between competing policy concerns, provides a just result by virtue of its overriding concern for how best to serve and further the public interest. No private employer is charged with implementation of such a critical public service as is a local police department. No ordinary, private person employer would ever find its employees engaged in such important discretionary works as is a community's police force. Thus, in such a unique employment context, the private person analysis placing liability on an employer when the employee is negligent, is in effect negated upon a finding of official immunity on the part of the public employee.

We find further support for our decision today in the federal judiciary's interpretation of the Federal Tort Claims Act which contains similar language in its waiver of governmental immunity. The federal provision states that where a government employee's negligence results in property damage, personal injury, or death, the United States will be liable for the acts of its employee "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346(b) (1993). The private person language also appears in another provision, stating that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. Indeed, our analysis of the quandary presented by part two has previously been expounded by the ninth circuit. *See Aguilar v. United States,* 920 F.2d 1475, 1477 (9th Cir.1990) (finding police officers have no private analogue for which private person analysis is workable). *Aguilar* presented very similar facts to the instant case, consisting of the alleged negligence of a federal police officer in addressing a traffic problem on the road crossing the Hoover Dam. The brakes of Aguilar's tractor-trailer failed while he was making the crossing, and Officer Babcock, charged with directing traffic over the dam, ordered Aguilar to repair the vehicle's air hose and did not allow Aguilar to "chock" the wheels of the truck throughout the repair. Aguilar's arm became pinned between the vehicle's two trailers while he was complying with Babcock's orders. The ninth circuit turned to state law to determine the scope of the government's liability through its employee. Thus, the court had to look to a comparable activity of a private actor. The court found no such comparable entity, stating: "In Nevada, of course, private individuals do not direct traffic on public highways. Nor does Nevada empower private individuals to mandate compliance with orders regarding conduct on public roads. Therefore, no Nevada state law governs the liability of private parties for the actions giving rise to Aguilar's suit." *Aguilar,* 920 F.2d at 1477. The resolution of the case did not end there, as the court had to proceed with the analysis of how Nevada law addressed the situation of a police officer in such circumstances. The court noted that looking at state law may result in finding the state law also limits the liability of such actors who do not have private analogues. *Id.* at 1477–78; *see also Louie v. United States,* 776 F.2d 819, 825 (9th Cir.1985) (distinguishing police officer's job from that of private individual because unique aspects of police officer's job involve "questions as to the power and authority to arrest, to maintain custody, and to lawfully restrict a person's liberty"). Although the precise issue before the court in *Aguilar* was

the application of Nevada's law placing a cap on recoverable tort claims, the court had to address a prior case in which it had found liability for the United States despite having found employees of the government agency immune from such suit. *See Wright v. United States*, 719 F.2d 1032, 1034–35 (9th Cir. 1983). The court's distinction of *Aguilar* and *Wright* coincides with our distinction as well. In *Wright* the issue before the court was the government's liability for malicious prosecution, in the face of the employees' immunity from such suit. The court reasoned that "because private persons were liable for malicious prosecution, so was the United States, as dictated by the FTCA. In Aguilar's case, private persons are not liable for negligently directing traffic." *Aguilar*, 920 F.2d at 1478.

The second circuit faced a similar conflict in the context of the duties of an agent of the Immigration and Naturalization Service (INS). *Caban v. United States*, 728 F.2d 68 (2nd Cir.1984). A similar rationale appears in *Caban* as appeared in the ninth circuit cases in that the second circuit ascribed the duties of such officers to a privilege authorized only by the United States government in furtherance of its exclusive privilege of protecting the country's borders. *Id.* at 73. The court looked to state law to determine liability for an allegedly illegal detainment by the INS and cast doubt on whether New York law would extend such a privilege to a private person. The court did find, however, that because New York law recognized the validity of a privileged detention in certain cases, the United States would face no liability so long as its employee, the individual officer, properly exercised the privilege.

Even the United States Supreme Court has confronted the private person language in the Federal Tort Claims Act and has attempted to navigate a course best satisfying the greater public interest. A trilogy of cases sets out a similar quandary as that at the state level. In the first of these cases, *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the court had to address the application of the Federal Tort Claims Act to the alleged negligence of the United States government in managing a fertilizer export program, a program which

the government had also overseen through the manufacturing phase as part of a post-war policy of assisting former occupied territories. The fertilizer contained an ingredient called fertilizer grade ammonium nitrate. Tons of the ammonium nitrate fertilizer were loaded onto a barge for export out of a dock in Texas City. Massive explosions and fire erupted because of the volatile ammonium nitrate ingredient, encouraged by a large quantity of combustible material as well as other explosives and sulphur that were aboard the same vessel. The conflagration spread until it consumed the dock area, effectively leveling the city and resulting in the death of some 560 people.

Most important for our purposes is another complaint lodged in the petitions that alleged negligence of the Coast Guard and others in providing proper storage of the fertilizer that would have prevented the fire. The court's reasoning in dismissing this claim relied primarily on an exception in the federal act for discretionary acts of government employees. Further, the court found the act did not change "the normal rule that an alleged failure or carelessness of public firemen does not create private actionable rights." *Id.* 346 U.S. at 43–45, 73 S.Ct. at 972; *but see Rayonier, Inc. v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) (overruling in part *Dalehite* for its proposition that the liability of the United States is restricted to that of a municipal corporation); *see also United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) et al.*, 467 U.S. 797, 812 n. 10, 104 S.Ct. 2755, 2764 n. 10, 81 L.Ed.2d 660 (1984) (explaining continued relevance of *Dalehite*'s holding regarding discretionary function exception). Again, the usual analysis for assessing liability as if the government were a private person was unworkable because there was no analogous liability in the private realm because of the unique function of this public service requiring the exercise of discretion. Because the actions of the Coast Guard were protected within the exception for discretionary acts, the Court found the petition did not state a cause of action within the Federal Tort Claims Act against the United States government.

*Dalehite* was soon followed by a case that seemed to directly contradict the earlier discussion of how to determine government liability when there is no analogous private activity. *See Indian Towing Company v. United States,* 350 U.S. 61, 64–70, 76 S.Ct. 122, 124–127, 100 L.Ed. 48 (1955) (assessing liability against the federal government for negligence of Coast Guard personnel in operating lighthouse). The government argued in *Indian Towing* that the statutory provision imposing liability on the government as if it were a private person had to be read as "excluding liability in the performance of activities private persons do not perform." *Id.* at 124, 76 S.Ct. at 64. A critical difference between *Dalehite* and *Indian Towing* was the government's concession in *Indian Towing* that a discretionary function was not at issue. In fact, the *Indian Towing* court's rationale for finding a waiver of sovereign immunity rested on an analogy to the rescue doctrine: that although there was no duty for the Coast Guard to operate a lighthouse, once the Coast Guard had voluntarily undertaken that duty to ensure the working order of the lighthouse light, "it was obligated to use due care to make certain the light was in working order." *Id.* 350 U.S. at 68–70, at 126–27.

Thirty years later, the Supreme Court was called upon to address the apparent conflict between the above two cases in the context of a lawsuit brought against the Federal Aviation Administration (FAA) alleging negligence in its issuing a certificate to a Boeing 707 indicating that the aircraft met all applicable safety standards. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) et al.,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Allegedly, a fire started in the lavatory of the Varig Airlines jet, and the cabin filled with smoke and asphyxiated almost all of the passengers before the pilots were able to safely land the plane. The petition alleged the FAA was negligent in issuing the certificate when the lavatory's trash receptacle was not designed to contain fires adequately. The court's holding finding no waiver of sovereign immunity relied exclusively on the discretionary function exception of the federal act. The court described the discretionary func-

tion exception as marking "the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." The court specifically rejected the demise of the discretionary function exception and in fact clarified the exception's application to government employees by stating that the parameters of any inquiry into the exception must be based on "whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Id.* 467 U.S. at 813, 104 S.Ct. at 2764. Although the court seemed to discourage the previously confusing language distinguishing governmental functions and nongovernmental functions, in the *Varig Airlines* case the court placed the governmental function label within the broader category of discretionary acts, indicating that the nature of governmental functions generally implied the use of judgment and discretion. In concluding that the government's functions of regulatory oversight are protected by the discretionary function exception, the court noted that the FAA was charged by statute with "a duty to *promote* safety in air transportation, not to insure it (emphasis supplied)." *Id.* 467 U.S. at 816, 104 S.Ct. at 2768.

These cases clearly offer an instructive parallel regarding the Texas Tort Claims Act's retention of official immunity for public employees. In practice, the official immunity provision retained in the Texas Tort Claims Act is comparable to the discretionary function exception found in its federal counterpart. The federal cases also provide some insight into the role of the private person language when the private sector provides no comparable activity. Although the United States Supreme Court declined to address specifically the "analogous private activity" test in the *Varig Airlines* case, the court was unequivocal in its accepting the policy reasons underlying the discretionary function exception. Thus, as the federal cases show, where the use of discretion by a government employee furthers a high-priority public policy and thus has been clearly protected by

statute, a trade-off inevitably will occur in which some wrongfully injured persons will be without remedy against the employer of the government employee. Such is the balance drawn by both national and state legislatures in providing only limited waivers of sovereign immunity.

As we have held here today, the letter and the spirit of the Texas Tort Claims Act does not support the interpretation offered by appellees. To impose liability on the county upon a finding that its police officers are officially immune in certain instances would require us in effect to ignore the official immunity finding. This result contradicts the Act's clear statement that official immunity remains intact and is not affected by the Act. Accordingly, the trial court erred in failing to grant appellant's motion for judgment notwithstanding the verdict as to the county once Huckeba was found to have acted in good faith and was thus protected by official immunity. The judgment of the trial court is reversed, and we render judgment that appellees take nothing.

J. CURTISS BROWN, Chief Justice, dissenting.

I respectfully dissent from the majority's decision to reverse and render. The majority interprets the "private person" language in section 101.021(2) to provide an exception to the waiver of the government's sovereign immunity when a government employee is found to be officially immune. The majority supports its construction of 101.021(2) with the "unique policy grounds supporting official immunity for police officers" and by analogizing the "private person" language in section 101.021(2) of the Texas Tort Claims Act to "private person" language in section 1346(b) of the Federal Tort Claims Act. I agree with the majority's discussion of official immunity as applied to Officer Huckeba. However, I fail to see the relevance of the policy reasons supporting official immunity in determining whether the legislature has waived sovereign immunity. I also believe that 101.-021(2) of the Texas Tort Claims Act and 1346(b) of the Federal Tort Claims Act are too dissimilar to be comparable.

Section 101.021 of the Texas Tort Claims Act provides as follows:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

Subsection (1)(A) waives sovereign immunity in suits arising out of "use" or "operation" of a motor vehicle or motor driven equipment. *Id.* 101.021(1)(A). However, the liability of the governmental unit is contingent upon the employee being personally liable for the loss. *Id.* 101.021(1)(B). Therefore, a governmental entity will retain its sovereign immunity if the employee is found to be officially immune. *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex.1993); *Carpenter v. Barner*, 797 S.W.2d 99, 102 (Tex.App.—Waco 1990, writ denied).

Subsection (2) provides a waiver of sovereign immunity for injury caused by a "condition or use of tangible personal or real property." The interpretation of subsection (2) has been the subject of much consternation among Texas courts. Most of the confusion has been centered around the determination of what is a "condition or use" of property. *See, e.g., Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 301 (Tex.1976) (Greenhill, C.J., concurring) (encouraging legislature to express more clearly its intent regarding waiver of governmental immunity); *Hatley v. Kassen*, 859 S.W.2d 367, 376–77 (Tex.App.—Dallas 1992, writ granted) (joining other

courts in urging legislature to clarify extent of waiver of sovereign immunity); *Lowe v. Harris County Hosp. Dist.*, 809 S.W.2d 502, 504 (Tex.App.—Houston [14th Dist.] 1989, no writ) (noting that it is technically possible to characterize any imaginable action as a case involving use of tangible property); *Beggs v. Texas Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 254 (Tex.Civ. App.—San Antonio 1973, writ ref'd) (stating the area of coverage created by the predecessor of 101.021(2) is "rather vague, and the extent of liability created thereby is far from clear"). Relatively few courts have interpreted the second part of section 101.021(2). *See City of Houston v. Newsom*, 858 S.W.2d 14, 19 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Wyse v. Department of Public Safety*, 733 S.W.2d 224, 228 (Tex.App.—Waco 1986, writ ref'd n.r.e.). The second part of section 101.021(2) states that sovereign immunity is waived only if the governmental unit would be liable "were it a private person." TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986).

The majority holds that "as a matter of law the governmental unit cannot be held liable under 101.021(2) when the employee of the governmental unit enjoys official immunity because the 'private person' language in this section precludes appellees' interpretation insofar as it applies to the unique policy grounds supporting official immunity for police officers." The majority notes that police officers are given official immunity because "public policy demands that they be able to carry out their duties without fear of personal liability." The majority concludes that to impose liability on the government upon finding the employee officially immune would, in effect, ignore the official immunity finding. The majority resolves this supposed problem by limiting the waiver of immunity in 101.-021(2) to governmental entities that have comparable providers in the private sector.

I agree with the majority's discussion of the reasons for official immunity. However, I do not agree with using those same reasons to construe the Tort Claims Act. Official immunity and the waiver of sovereign immunity are two distinct doctrines created to further very different public goals. Official immunity developed in the common law and applies to a government employee's individual liability. As stated by the majority, the purpose of official immunity is to allow police officers discretion in performing their duties without incurring personal liability. Official immunity has no bearing on determining whether the government has waived sovereign immunity except where the legislature has expressly incorporated official immunity into the Tort Claims Act, as in section 101.-021(1)(B). *See Kilburn*, 849 S.W.2d at 812.

Sovereign immunity also was developed in common law to protect the government from "endless embarrassments, difficulties, and losses which would be so subversive to the public interest as to compel it to abandon all but the bare essentials of public government." *State v. Brannan*, 111 S.W.2d 347, 348 (Tex.Civ.App.—San Antonio 1937, writ ref'd). The legislature enacted the Tort Claims Act to provide a waiver of sovereign immunity in certain circumstances and to grant permission to all claimants to bring suit against the state for all claims arising under the Act. *Brown v. Owens*, 674 S.W.2d 748, 750 (Tex.1984). The societal interest furthered by the waiver of sovereign immunity is that "society as a whole, rather that the injured individual or family, ... bear[s] the risk of loss for injuries caused by the negligence of public employees performing services for the entire community." Joe R. Greenhill, *Should Governmental Immunity for Torts Be Re-examined, and, If So, by Whom?*, 31 Tex.B.J. 1036, 1068 (1968). The legislature expressly recognized that different policy reasons support the waiver of sovereign immunity, as opposed to those supporting official immunity, by leaving a government employee's individual immunity intact regardless of the government's liability under the Tort Claims Act. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 101.026 (Vernon 1986).

Contrary to the majority's conclusion, had we held that the government was liable for the police officer's negligence, the police officer's official immunity would not be a nullity. This is exactly the type of situation contemplated by section 101.026. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.026 (Vernon 1986)

(ensuring that a government employee retains her official immunity regardless of the government's liability). In addition, by holding the government liable for the negligent torts of its police officers, the purpose of the tort claims act is furthered in that society, rather than the individual victim, bears the loss. This liability, however, is not unbridled. A court must still determine, as a matter of law, whether the loss was caused by a condition or use of tangible personal or real property. *Id.* 101.021(2).

The majority also compares the "private person" language of the Texas Tort Claims Act to similar language in the Federal Tort Claims Act. After an extensive analysis of federal case law, the majority concludes that because police officers do not have a private analogue, the government is entitled to sovereign immunity when the police officer is found to be officially immune. However, I believe that section 101.021 of the Texas Tort Claims Act and 1346(b) of the Federal Tort Claims Act are too different on their faces to be analogous and that infusing federal courts' interpretations of the "private person" language in the Federal Tort Claims Act into the construction of the Texas Tort Claims Act is both unprecedented and undesirable.

Section 1346(b) of the United States Code states that district courts shall have exclusive jurisdiction for suits arising from:

> personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person,* would be liable to the claimant in accordance with the law of the place where the act or omission took place.

28 U.S.C.A. § 1346(b) (West 1993) (emphasis added). The Federal Tort Claims Act is purely jurisdictional and creates no substantive causes of action. *Feres v. United States,* 340 U.S. 135, 140–41, 71 S.Ct. 153, 156–57, 95 L.Ed. 152 (1950); *Jarrett v. United States,* 874 F.2d 201, 203 (4th Cir.1989). The Federal Act provides jurisdiction in federal courts for claims against the United States for torts caused by an employee if a private person would be liable under similar circumstances

based on the law of the state where the tort occurred. 28 U.S.C.A. § 1346(b) (West 1993). Therefore, a federal court must look to state law to determine whether a cause of action exists. *Aguilar v. United States,* 920 F.2d 1475, 1477 (9th Cir.1990).

Conversely, the Texas Tort Claims Act creates a cause of action against the state by waiving sovereign immunity for injury caused by "a condition or use of tangible personal or real property if the government unit would, *were it a private person,* be liable to the claimant according to Texas law." TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986) (emphasis added). The Texas Act actually makes the government a private person for liability purposes for losses arising from a condition or use of tangible personal or real property. *Id.* By using the language "were it a private person," the legislature has placed the government into the shoes of a private person and has waived any right to hide behind the official immunity of its employees. In addition, the Texas Tort Claims Act differs from the Federal Tort Claims Act in its format. Unlike the Federal Act, the Texas Tort Claims Act is divided into two sections with the first part specifically retaining sovereign immunity when the employee is found to be officially immune. *See id.* § 101.021(1)(B); *Kilburn,* 849 S.W.2d at 812. Finally, the majority does not cite, nor have I found, any Texas cases that have relied on a federal court's construction of section 1346(b) of the Federal Act, a jurisdictional statute, to interpret the "private person" language of section 101.021(2) of the Texas Act. To adopt such a mode of construction would serve only to further confuse an already befuddled area of Texas law.

Even if the "private person" language in the Federal Tort Claims Act is relevant in interpreting the Texas Tort Claims Act, federal case law does not support the majority's proposition that the government retains sovereign immunity when the employee is found to be officially immune. In fact, a case relied upon by the majority with similar facts as our case holds contrariwise to the position of the majority. *See Aguilar,* 920 F.2d at 1477. In *Aguilar,* the plaintiffs sued the United States government for the negligence of a

federal officer in directing traffic around a disabled tractor-trailer on Hoover Dam. *Id.* at 1476. Applying a Nevada law that limited recoveries against police officers, the court found that the plaintiffs could recover up to fifty thousand dollars against the government. *Id.* at 1479. Recognizing that private persons do not direct traffic on public highways, the court held that under the Federal Tort Claims Act "the United States may 'be liable for the performance of activities private persons do not perform.'" *Id.* at 1477. (quoting *Doggett v. United States,* 875 F.2d 684, 689 (9th Cir.1989)). In addition, in a recent case considering the liability of the United States for injuries caused by a federal officer's negligence in a high speed chase, the ninth circuit held that "a finding of immunity for state employees under state law does not necessarily mean that the United States has no liability for injuries caused by its employees." *Stuart v. United States,* No. 93-55229, 1994 WL 57850 (9th Cir. Mar. 1, 1994). The United States Supreme Court also has rejected the argument that the government cannot be liable for the performance of "uniquely governmental functions." *Indian Towing Company v. United States,* 350 U.S. 61, 64-65, 76 S.Ct. 122, 124-125, 100 L.Ed. 48 (1955). Absent a statutory exception, such as the "discretionary function" exception in section 2680(a), the Court held that the government can be held liable for negligence at the "operational level" of governmental activity regardless of whether private persons perform a similar activity. *Id.*

The Texas Tort Claims Act is to be construed so as "to give effect to the object 'sought to be attained' by the Act." *Robinson v. Central Texas MHMR Center,* 780 S.W.2d 169, 170 n. 2 (Tex.1989) (quoting TEX. GOV'T CODE ANN. § 311.023 (Vernon 1988)). Every word of a statute must be presumed to have been used for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981). We cannot ignore the language of a statute unless it is necessary to give effect to the legislature's clear intent. *Id.*

Appellant contends, and the majority agrees, that section 101.021(2) mandates that once the governmental employee is found to be officially immune, the government will

also be immune. Such a construction would make 101.021(2) indistinguishable from 101.-021(1)(B) rendering the "private person" language in section 101.021(2) meaningless. The language of section 101.021(2) unequivocally provides a different standard than that of section 101.021(1) with regard to the governmental entity's liability. Section 101.-021(2) states that the governmental unit's liability is contingent upon its liability if it were a private person. Section 101.021(1) requires that the employee be personally liable in order for a waiver of sovereign immunity by the state. Had the legislature intended to have the same standard for both subsections (1) and (2), they would have used identical language. As different language was used, I must conclude that the legislature intended a different meaning in subsection (2) than in subsection (1).

Appellant contends that the Texas Supreme Court has expressly approved of its construction of section 101.021(2) in *Kilburn,* 849 S.W.2d at 812. However, in *Kilburn,* the Supreme Court made no mention of section 101.021(2). *Id.* The court, in dicta, used section 101.021(1) as an example of when a governmental entity may appeal interlocutory orders on questions of sovereign immunity under section 51.014 of the Civil Practices and Remedies Code. *Id.* at 812. The Supreme Court decided *Kilburn* on procedural grounds without examining whether the plaintiff's claim properly fell under either section 101.021(1) or section 101.021(2) of the Tort Claims Act. *Id.* Similarly, the court in *Wyse v. Department of Public Safety* stated, in dicta, that the government would not be liable if its employees were found to be officially immune after holding that the plaintiff's claim was outside the purview of the Tort Claims Act. *Wyse,* 733 S.W.2d at 228. The other cases cited by appellant in its Motion for Rehearing and its brief also involve courts deciding cases on grounds other than the construction of section 101.021(2). *See, e.g., Huddleston v. Maurry,* 841 S.W.2d 24 (Tex.App.—Dallas 1992, writ dism'd w.o.j.) (interpreting section 101.021(1)); *Eakle v. Texas Dept. of Human Services,* 815 S.W.2d 869 (Tex.App.—Austin 1991, no writ) (finding liability excepted under section 101.056 while expressly not deciding whether a cause of

action was valid under section 101.021(2)); *Carpenter v. Barner,* 797 S.W.2d 99 (Tex. App.—Waco 1990, writ denied) (construing section 101.021(1)); *Dent v. City of Dallas,* 729 S.W.2d 114 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988) (holding traffic accident was caused entirely by the negligence of a fleeing suspect, thereby not implicating the Texas Tort Claims Act). This court relied on *Wyse, Carpenter,* and *Kilburn* to incorrectly conclude that a governmental entity retains its sovereign immunity under subsection 101.021(2) solely because an employee is found to be officially immune. *Newsom,* 858 S.W.2d at 19. I, therefore, would overrule *Newsom* with regard to this issue.

When liability is waived by the Texas Tort Claims Act, the doctrine of respondeat superior will apply to the state. *University of Texas Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994); *Driskill v. State,* 787 S.W.2d 369, 370 (Tex.1990). Under the doctrine of respondeat superior, a employer is vicariously liable for the negligence of its employee committed within the scope of the employee's general authority. *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex.1971). "Were it a private person," the government would be the employer of a negligent employee. *See* Tex.Civ.Prac. & Rem. Code Ann. § 101.021(2) (Vernon 1986). As we have found Officer Huckeba officially immune, we also necessarily have determined that he was acting within in the scope of his authority. However, before we can apply the doctrine of respondeat superior to hold the County liable for the negligence of its employee under section 101.021(2), the appellees' injuries must arise out of a condition or use of tangible personal or real property. Tex.Civ.Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1986).

We were unable to address whether appellees' claims arose out of a condition or use of property because that issue was not before us on appeal. A point of error is not properly briefed and presents nothing for review where appellant cites no authority and makes no argument. *See* Tex.R.App.P. 74(f); *Sierra Stage Coaches, Inc. v. La Porte Sch. Dist.,* 832 S.W.2d 191, 194 (Tex.App.—Houston [14th Dist.] 1992, no writ). Appellant did not allege, nor did it provide any argument, that appellees' claims were not caused by a condition or use of tangible personal or real property.

Appellant's sole point of error was that the trial court erred in ruling that Harris County was not entitled to immunity. Appellant made two arguments in support of its point of error: 1) the County cannot be held liable for the actions of an employee found to be immune; and 2) the County owes no duty to persons travelling on state roads. I have rejected the appellant's first argument and its second argument is irrelevant in determining whether a waiver occurred under section 101.021(2). Section 101.021(2) only requires that the injury be caused by a use or condition of tangible personal property and that the governmental unit, were it a private person, be liable to the claimant under Texas law. Tex.Civ.Prac. & Rem.Code Ann. § 101.-021(2). The County's liability was derived solely from its employee's negligence. Whether the County owes a duty to persons traveling on state-owned roads is immaterial to the determination of whether sovereign immunity has been waived by section 101.-021(2). It is enough that the County's employee owed a duty to the public to direct traffic in a non-negligent manner.

Having rejected both of appellant's arguments and without any argument that appellees' claims were not caused by a condition or use of tangible personal or real property, I would not disturb the trial court's finding that liability existed under the Tort Claims Act. Accordingly, I would overrule appellant's point of error and affirm the judgment of the trial court.

ELLIS and LEE, JJ., joined.