**TARRANT COUNTY and James L. Kirkpatrick, Appellants,**

v.

**Henry DOBBINS, Jr., Individually, Hazel Dobbins, Individually, and Carol Kennedy, as Next Friend of Christopher Lee Kennedy, Appellees.**

No. 2–95–223–CV.

Court of Appeals of Texas, Fort Worth.

April 4, 1996.

Rehearing Overruled May 9, 1996.

Tim Curry, Criminal District Attorney, Dana M. Womack, Assistant District Attorney, Fort Worth, for Appellants.

C. Gregory Shamoun and W. Charles Campbell, Law Offices of Joseph E. Ashmore, Jr., P.C., Dallas, for Appellees.

Before LIVINGSTON, RICHARDS and BRIGHAM, JJ.

## OPINION

RICHARDS, Justice.

This is an appeal from a district court order denying summary judgment to a defendant county and county medical examiner's office investigator who claim sovereign and official immunity as affirmative defenses. The suit arose after the medical examiner's investigator took custody of the body of a person the Appellees contend was not dead.

Henry Dobbins, Hazel Dobbins, and Carol Kennedy, as next friend of Christopher Lee Kennedy, (the Appellees) filed suit against Tarrant County and James L. Kirkpatrick, an investigator for the Tarrant County Medical Examiner's office. Kirkpatrick moved for summary judgment asserting the affirmative defense of official immunity. Tarrant County moved for summary judgment asserting the affirmative defense of sovereign immunity based upon Kirkpatrick's claim of official immunity. Tarrant County and Kirkpatrick appeal the trial court's denial of both motions. Because as a matter of law Kirkpatrick is entitled to official immunity, we reverse and render summary judgment for Kirkpatrick and Tarrant County.

### Factual Background

Henry Leon Dobbins was shot in the head and admitted to John Peter Smith Hospital a little after 3:00 a.m. on June 9, 1991. The wound was very serious, and Dobbins was placed on a ventilator. At 8:59 a.m., Dr. Raymond LeBlanc assessed Dobbins as clinically brain dead and ordered a cerebral blood-flow study on him. After reviewing the results of this test, another physician, Dr. Douglas Lewis, pronounced Dobbins dead at 5:00 p.m. and informed his parents.

Dobbins was taken off the ventilator but, although clinically dead, he continued to "breathe." He had a respiratory rate of 16 respirations per minute, a heart rate of 154, and blood pressure of 140/80 at 5:10 p.m. Kirkpatrick determined that the medical examiner's office had jurisdiction over the case

and took custody of Dobbins's body at 6:06 p.m. despite these respirations and vital signs. The body was taken to the medical examiner's office and placed in the cooler. Another investigator called the Chief Medical Examiner, Dr. Nizam Peerwani, and told Dr. Peerwani about the respirations. Dr. Peerwani told that investigator to call the doctor at John Peter Smith Hospital who had pronounced Dobbins dead, or to call 911 and transfer Dobbins's body back to the hospital if the doctor could not be reached. After ninety minutes in the cooler at the medical examiner's office, the body was transferred back to the hospital. Dobbins's body was placed in a private room, but he received no further treatment and was left unattended. At 8:56 p.m., the spontaneous respirations ended.

### Summary Judgment Standard of Review

■ In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R.CIV.P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

■ In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontro-

verted. *Great Am.*, 391 S.W.2d at 47. If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *See* TEX. R.CIV.P. 166a(c). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston*, 589 S.W.2d at 678.

■ A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact on the element challenged by the defendant. *Centeq Realty*, 899 S.W.2d at 197.

### Interlocutory Appeals

■ An order overruling or denying a motion for summary judgment is not a proper subject for appeal. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex.1994); *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex.1980). An exception exists when the trial court denies a motion for summary judgment based on an assertion of immunity by an officer or employee of the state or a political subdivision of the state. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1996).

This rare opportunity for interlocutory appellate review reveals just how important the legislature considers ... government employees to be. When successfully invoked, such procedure renders an officer's immunity an *immunity from suit*, not just immunity from liability.

*Travis v. City of Mesquite,* 830 S.W.2d 94, 102 n. 4 (Tex.1992) (Cornyn, J. concurring). Though both Kirkpatrick and Tarrant County have asserted several grounds for summary judgment, we limit our review to the merits of Kirkpatrick's defense of official immunity and to Tarrant County's assertion of sovereign immunity based on Kirkpatrick's official immunity. *See Boozier v. Hambrick,* 846 S.W.2d 593, 596 (Tex.App.—Houston [1st Dist.] 1993, no writ) (concluding that assertion of immunity is sole ground for summary judgment reviewable by appellate court when jurisdiction over interlocutory appeal is based on defendant's claim of immunity); *cf. Harris County v. Ochoa,* 881 S.W.2d 884, 886 (Tex.App.—Houston [14th Dist.] 1994, writ denied) ("Because of the limited appellate jurisdiction of this appeal, we will only address the immunity defense and not the merits of the case."). Accordingly, the primary issue in this case is whether Kirkpatrick conclusively established all elements of the affirmative defense of official immunity.

### Official Immunity

■ "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Official immunity protects the government employee and the public. "The public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions." *Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994).

1. *Was Kirkpatrick Performing a Discretionary Duty?*

■ In their fourth reply point, the Appellees assert that the trial court was correct in denying summary judgment to Kirkpatrick and Tarrant County because Kirkpatrick did not prove as a matter of law he was engaged in a discretionary act rather than a ministerial act.

■ "If an action involves personal deliberation, decision and judgment, it is discretionary; actions [that] require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial." *City of Lancaster,* 883 S.W.2d at 654. But the distinction between ministerial duties and discretionary duties is problematic, and labelling an act as discretionary is "probably only a shorthand notation for a more complex policy decision." *Kassen,* 887 S.W.2d at 9 (citing *City of Lancaster,* 883 S.W.2d at 653–54 and PROSSER AND KEETON ON THE LAW OF TORTS § 132 at 1062 (W. Page Keeton et al. eds, 5th ed. 1984)).

■ This distinction, though problematic, has been articulated as follows:

A ministerial act is one which a person performs in a given state of facts and in a prescribed manner in obedience to the method of legal authority, without regard to his own judgment on the propriety of the act being done. The distinction between ministerial and judicial and other official acts is that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but, *where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists,* it is not to be deemed ministerial.

*Miller v. State,* 53 S.W.2d 838, 840 (Tex.Civ.App.—Amarillo 1932, writ ref'd) (emphasis added). A significant aspect of the process of determining whether an official's act is ministerial or discretionary involves searching for a law or regulation controlling the acts of the officer in a particular situation. *Harris County v. DeWitt,* 880 S.W.2d 99, 101 (Tex.App.—Houston [14th Dist.] 1994, *aff'd,* 904 S.W.2d 650 (Tex.1995).

Kirkpatrick was a death investigator for the Tarrant County Medial Examiner's office. Death investigators are authorized by statute to "provide assistance to those persons in the county who conduct inquests." TEX.CODE CRIM.PROC.ANN. art. 49.23(a) (Vernon Supp.1996). In Tarrant County, inquests are conducted by any medical examiner or duly authorized deputy. *Id.* art. 49.25 § 6 (Vernon Supp.1996). Article 49.25, section 6 of the Texas Code of Criminal Proce-

dure lists eight situations where the medical examiner or his deputy must conduct an inquest. *Id.* Section 3 of that same article authorizes the medical examiner to employ investigators when necessary to properly perform his duties. *Id.* art. 49.25 § 3 (Vernon 1979). To be a death investigator, a person must have experience or training in investigative procedures concerning the circumstances, manner, and cause of the death of a deceased person. *Id.* art. 49.23(b) (Vernon Supp.1996).

Tarrant County Medical Examiner Dr. Nizam Peerwani stated that Kirkpatrick's purpose in going to John Peter Smith Hospital was to "investigate the case *and determine if statutory jurisdiction should be assumed* regarding Henry Leon Dobbins." [Emphasis added.] In other words, Kirkpatrick went to the hospital and used his discretion or judgment *in determining whether the duty existed* on the part of the medical examiner to hold an inquest in Dobbins's case. The Appellees argue that Kirkpatrick was not engaged in any authorized investigation or assumption of jurisdiction that would support official immunity (1) because Dobbins was not dead and (2) Kirkpatrick's authority to investigate and assume custody did not extend to living persons.

The Appellees make the point for Kirkpatrick and Tarrant County: Kirkpatrick had to determine that Dobbins was dead before he could determine whether "statutory jurisdiction should be assumed" because the medical examiner had a duty to hold an inquest. Two doctors had pronounced Dobbins dead. The Appellees state Dobbins was alive. That opposing views exist on this question should suffice to illustrate the personal deliberation and judgment required of Kirkpatrick when he took custody of Dobbins's body. As a matter of law, Kirkpatrick was engaged in a discretionary act when he determined that the medical examiner was required to perform an inquest and he assumed custody of Dobbins's body.

### 2. Was Kirkpatrick Performing His Duty in Good Faith?

■ In their second reply point, the Appellees assert that the trial court was correct to deny the motions for summary judgment because a material issue of fact existed on whether Kirkpatrick acted in good faith when he assumed jurisdiction over Dobbins's body for the medical examiner's office.

■ In *City of Lancaster,* the Texas Supreme Court adopted an "objective legal reasonableness" test for the element of good faith in official immunity cases. 883 S.W.2d at 656. In that case, the court held that a police officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend a suspect outweighed a clear risk of harm to the public in continuing the pursuit. *Id.* The court clarified the necessary proof required for summary judgment:

> The "could have believed" aspect of the good faith test means that in order *to be entitled to summary judgment, an officer must prove that a reasonably prudent officer might have believed that the pursuit should have been continued.* It does not mean that an officer has to prove that it would have been unreasonable to stop the pursuit; nor must the officer prove that all reasonably prudent officers would have continued the pursuit. *To controvert* the officer's *summary judgment proof on good faith,* the plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit; *the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified the defendant's acts."*

*Id.* at 656–57 (emphasis added). The court's test "sets **an elevated standard of proof for the nonmovant seeking to defeat a claim of official immunity** in response to a motion for summary judgment." *Id.* at 656 (emphasis added).

In this case, therefore, to establish his right to summary judgment on the good faith element of official immunity, Kirkpatrick had to prove that *a reasonably prudent death investigator might have believed that he could have assumed custody of Dobbins's body for the medical examiner to conduct an inquest.* To controvert Kirkpatrick's sum-

mary judgment proof on good faith, the Appellees must have shown that *no reasonable medical investigator in Kirkpatrick's position could have thought that the facts were such that they justified Kirkpatrick assuming jurisdiction over the body.* Because Kirkpatrick had no jurisdiction over living persons, essentially Kirkpatrick had to prove that a reasonably prudent death investigator might have believed that Dobbins was dead.

We believe Kirkpatrick established that a reasonably prudent medical investigator could have believed Dobbins was dead based his own experience and on two physicians' declarations that Dobbins was dead. The Texas Health and Safety Code sets out the standards used in determining death. *See* TEX.HEALTH & SAFETY CODE ANN. § 671.001(b) (Vernon 1992) (providing that in a case where "artificial means of support preclude a determination that a person's spontaneous respiratory and circulatory functions have ceased, the person is dead when, in the announced opinion of a physician, according to ordinary standards of medical practice, there is irreversible cessation of all spontaneous brain function"). Section 671.002 of the code limits the liability of a person who relies on a doctor's determination of death: "A person who acts in good faith in reliance on a physician's or registered nurse's determination of death is not liable for civil damages or subject to criminal prosecution for the person's actions." *Id.* § 671.002(b) (Vernon 1992). Though this statute does not control our determination, and although the "in good faith" language in the statute somewhat begs the question we are attempting to answer, we believe that this statute does support a determination that an investigator acts reasonably in determining that a person is in fact dead when a doctor has made such a pronouncement. In this case, two doctors determined that Dobbins, who was on a ventilator, was brain dead based upon a study of his cerebral blood flow.

The nurse's notes, which are included in the summary judgment record, indicate that although Kirkpatrick was aware that Dobbins was experiencing spontaneous respirations and had a pulse and blood pressure, Kirkpatrick was also aware that Dobbins was brain dead and that "this happens all the time." Noting that the law required Kirkpatrick to have experience or training in the circumstances, manner, and cause of death to be a death investigator, *see* TEX.CODE CRIM. PROC.ANN. art. 49.23(b) (Vernon Supp.1996), we believe that these statements support a finding that Kirkpatrick could have reasonably believed Dobbins was in fact dead and that he should assume custody of Dobbins's body.

The Appellees rely on the following to controvert Kirkpatrick's summary judgment proof: Dobbins had spontaneous respirations, blood pressure, and a pulse at all times when Kirkpatrick was at the hospital. The Appellees' expert, Dr. Charles Petty, Dallas County's Chief Medical Examiner, reviewed the documents in this case and stated that: (1) in determining whether a person is in fact dead, a medical examiner (and presumably a death investigator acting for a medical examiner) should determine independently if there are any facts that "confirm or refute the physician's pronouncement;" (2) a death investigator should not assume statutory jurisdiction over a person when he "knows or has reason to know that a person is having spontaneous respirations;" and (3) in his opinion Kirkpatrick violated the standard of care for medical examiners and investigators in this case and "demonstrated a lack of good faith and good judgment" when he assumed jurisdiction over Dobbins. The question is whether this evidence by the Appellees shows that no reasonable person in Kirkpatrick's position could have thought the facts were such that they justified his assuming jurisdiction over Dobbins's body. *See City of Lancaster,* 883 S.W.2d at 657. For the reasons stated above, we do not believe it does in this case.[1] Even as he opines that Kirkpatrick did not act in good faith, Dr. Petty acknowledges in his affidavit that "a medical investigator is certainly entitled to rely upon a physician's pronouncement of death."

1. We do not suggest, however, that any time a medical investigator acts in reliance on a physi-

cian's pronouncement of death that the investigator *per se* acts in good faith.

Finally, the policies behind official immunity support a finding of good faith in this case. In *City of Lancaster*, the Texas Supreme Court described the competing interests involved in ruling on an official immunity defense:

> On one hand, there is (1) the injustice, particularly in absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; [and] (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good. On the other hand, the court must consider the rights of bystanders or other innocent parties if an officer acts in gross disregard of public safety.

883 S.W.2d at 656 (citations omitted). In this case, it would be unjust to subject Kirkpatrick to liability for actions that he took in reliance on the expertise of two physicians. If we were to find Kirkpatrick liable, we not only would be second-guessing the doctors' pronouncements of death in this case, but we would be second-guessing a decision Kirkpatrick himself presumably made based on his own deliberation and judgment. There is a real necessity for decisive, and often quick, action in cases where an inquest is mandated. Often these cases are to determine the cause of death in suspicious circumstances. *See* TEX.CODE CRIM.PROC.ANN. art. 49.25 § 6(2–3) (Vernon Supp.1996) (ordering inquests in cases where person dies unnatural death or because of unknown circumstances). The public good is best served by death investigators who execute their offices without the threat that a court will make a determination of death contrary to their own, especially when their determinations are preceded by that of two medical doctors. As a matter of law, Kirkpatrick acted in good faith when he assumed jurisdiction over Dobbins's body in this case.

We find that Kirkpatrick performed a discretionary act in good faith within the scope of his employment and was entitled as a matter of law to official immunity from liability. The trial court erred in denying summary judgment to Kirkpatrick based on his affirmative defense of official immunity.

## Tarrant County's Sovereign Immunity

 A political subdivision of the state is not liable for the acts or conduct of its officers or employees unless its immunity is waived by the Texas Tort Claims Act. *City of Lancaster*, 883 S.W.2d at 658. Section 101.021(2) of the Texas Tort Claims Act waives sovereign immunity when a governmental unit would, were it a private person, be liable to a claimant under Texas law for personal injury and death caused by a condition or use of tangible personal or real property. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986).

 In their fifth reply point, the Appellees assert that even if Kirkpatrick is entitled to official immunity, Tarrant County is not automatically entitled to sovereign immunity. But the Texas Supreme Court has stated: "It would serve no legislative purpose to declare a waiver of sovereign immunity when the basis of liability is respondeat superior and the acts of the employee are covered by official immunity." *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995). In *DeWitt*, the court held that where a deputy county constable was entitled to official immunity, the county that employed him could not be held liable under section 101.021(2) of the Texas Tort Claims Act. *Id.*

In this case, the Appellees seek to hold Tarrant County liable under this same section of the Texas Tort Claims Act for Kirkpatrick's actions. We have already decided that Kirkpatrick has established his right to official immunity as a matter of law. Applying *DeWitt*, we hold that in this case Tarrant County has not waived its sovereign immunity and is entitled to summary judgment on all claims by the Appellees.[2] The trial court erred when it denied Tarrant County sum-

---

2. In *City of Corinth v. Gladys & Gladys*, 916 S.W.2d 618, 623 (Tex.App.—Fort Worth, 1996, n.w.h.), we held that sovereign immunity based on a finding of official immunity on behalf of an employee of a governmental unit, exists for claims asserted under 101.021(2) of the Texas Tort Claims Act for "misuse of tangible personal property" (as in this case), but not for those regarding a condition of tangible personal or real property.

mary judgment on its affirmative defense of sovereign immunity.

### Summary

We first note that in addition to asserting a point of error complaining that the trial court erred in denying their motion for summary judgment, Tarrant County and Kirkpatrick assert a second point of error complaining of the trial court's exclusion of two affidavits as summary judgment evidence. These affidavits were by Kirkpatrick and by Darrell Thompson, another investigator. Because our opinion does not depend on any facts in these affidavits, we decline to address point of error two as moot.

As a matter of law, Kirkpatrick was engaged in a discretionary function. As a matter of law, Kirkpatrick acted in good faith when he assumed jurisdiction over Dobbins's body after two doctors had pronounced Dobbins brain dead. Because Kirkpatrick established all elements of his affirmative defense of official immunity, he is entitled to summary judgment on all of the Appellees' claims. Because Kirkpatrick is not liable, Tarrant County is entitled to summary judgment based on its affirmative defense of sovereign immunity. We reverse the trial court's denial of the summary judgments and render judgment that the Appellees take nothing on their causes of action against Kirkpatrick and Tarrant County.