JONALSTEM, LTD., Robert J. Sabinske, Al Graff, Oliver Gould, and Suzanne Stemmons Beeman, Executrix of the Estate of L.A. Stemmons, Deceased, Appellants,

v.

CORPUS CHRISTI NATIONAL BANK, N.A., et al., Appellees.

No. 13–94–037–CV.

Court of Appeals of Texas, Corpus Christi.

April 4, 1996.

Rehearing Overruled June 13, 1996.

John A. Pace, Pace & Rickey, Dallas, Robert D. Thorpe, Corpus Christi, for appellants.

Charles A. Crocker, Houston, Shirley Selz, Corpus Christi, J.M. Monks, Houston, for appellees.

Before DORSEY, ONION [1], and TED M. AKIN [2], JJ.

DORSEY, Justice.

This is an appeal of a summary judgment. One of the grounds asserted by appellees in their motion for summary judgment was res judicata. We hold that res judicata bars the present action and affirm the judgment.

Appellants are successors in interest in an oil and gas lease covering land in San Patricio County, entered into by appellee Corpus Christi National Bank, Trustee, as lessor in the 1960s. L.A. Stemmons, the operator of the lease, and appellants' predecessors in interest owned the working interest in the lease. Gas was produced from the lease. In 1966, Stemmons entered into a twenty-year contract to sell gas produced on the land to the Lo–Vaca Gathering Company. Through this contract, Lo–Vaca agreed to pay Stemmons $.24 per thousand cubic feet (MCF) for gas produced from his number-seven well.

In 1977, Stemmons asked Lo–Vaca to increase its purchase price to $1.00 per Mcf, claiming it was unprofitable for him to sell gas to Lo–Vaca for $.24. Lo–Vaca's Corpus Christi manager Bobby Gillespie recommended doing so, but Lo–Vaca refused to increase the price. Appellee John T. Ashford, Lo–Vaca's Vice President at the time, was the officer who refused to increase the price. Ashford left Lo–Vaca in 1978.

---

1. Assigned to this Court by the Chief Justice of the Texas Supreme Court pursuant to Tex. Gov't Code Ann. § 74.003 (1988).

2. Assigned to this Court by the Chief Justice of the Texas Supreme Court pursuant to Tex. Gov't Code Ann. § 74.003 (1988).

In 1979, Stemmons sued Lo–Vaca for breach of contract in a Harris County District Court. Stemmons alleged that Lo–Vaca had breached the 1977 price-increase agreement which Stemmons had reached with Gillespie. Stemmons further alleged that "Lo–Vaca and its officers wrongfully and fraudulently determined not to make payment to him as agreed." In addition to breach of contract, Stemmons' pleadings alleged conspiracy, as follows:

> that this well was located on a ranch in San Patricio County, Texas, known as the Jackson Ranch. That the ranch was being administered under a trust by the Corpus Christi State National Bank as Trustee. That after the other wells which he [Stemmons] had drilled became unprofitable, he released the lease according to its provisions and that Bob Brinkerhoff, owner of the Brinkerhoff Oil Company, became the owner of a lease to a tract of an offsetting well which had previously been drilled by STEMMONS. That Brinkerhoff negotiated a price for the sale of gas from said Well No. 3 in the amount of $2.05 per MCF. *Plaintiff alleges that in furtherance of a conspiracy with the Corpus Christi State National Bank to get said lease released that LO–VACA refused to comply and fulfill its agreement to pay STEMMONS the price of $1.00 per MCF.* That as a result of such conspiracy between LO–VACA and the Corpus Christi State National Bank, STEMMONS has been damaged....(emphasis added)

Stemmons died in 1983 and was succeeded in interest by his daughter, Suzanne Stemmons Beeman, the executrix of his estate. The Harris County case was tried in 1985, and the trial court found, *inter alia*, that Lo–Vaca did not breach an agreement with Stemmons to increase its purchase price to $1.00 and that no conspiracy existed between Lo–Vaca and the Corpus Christi State National Bank. The trial court further found that Stemmons' alleged conspiracy action was barred by the statute of limitations.

The trial court's final judgment was entered on February 4, 1985.[3]

The present case was filed on August 18, 1986. In it, appellants complain about Ashford's rejection of the 1977 proposed price increase. Appellants do not assert a contract theory in this suit. Instead, they contend that Corpus Christi National Bank, its trust officer Herb Helbig, and Bob Brinkerhoff, who owned an interest in an offsetting well on the same property as appellants (or their predecessors), conspired to have Ashford reject the price increase. Appellants claim that Ashford and Helbig secretly owned a percentage of Brinkerhoff's offsetting well and that Ashford, conspiring with the others, refused to raise the price Stemmons would receive for his gas to force Stemmons off the lease. Appellants contend that the conspirators sought to run Stemmons off so that Brinkerhoff could obtain the gas and negotiate a higher sale price for the gas. Because Helbig and Ashford allegedly owned a part of Brinkerhoff's offsetting well, all of the conspirators would benefit from Stemmons' forced relinquishment of his well. Appellants claim they did not learn of Ashford's and Helbig's interest in Brinkerhoff's well until shortly before filing this suit and, therefore, are not precluded from bringing this suit.

Although appellants claim the conspiracy manifested itself in 1977 when Ashford rejected Stemmons' requested price increase, they did not relinquish their interest in the well until 1983, after Stemmons' death. They claim damages based on the difference between the proposed price of $1.00 per Mcf and the amount per Mcf which they actually received for their gas between 1977 and 1983. They also claim damages for the value of number-seven-well gas sold after 1983.

In July 1993, appellees moved for summary judgment on grounds of collateral estoppel, res judicata, and limitations. The trial court granted summary judgment without specifying its reasons. When a trial court's summary judgment order does not

---

3. Beeman appealed the trial court's judgment but did not challenge the trial court's findings of fact or conclusions of law regarding the alleged conspiracy. In an unpublished opinion, the First Court of Appeals affirmed the trial court's judgment on September 26, 1985. The Supreme Court of Texas refused Beeman's application for writ of error on February 5, 1986.

specify the ground on which summary judgment is granted, the summary judgment will be upheld if any of the grounds asserted are meritorious. *Home Indemnity Co. v. Pate,* 814 S.W.2d 497, 500 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Benavides v. Moore,* 848 S.W.2d 190, 192 (Tex.App.—Corpus Christi 1992, writ denied). We find summary judgment properly granted on grounds of res judicata.[4]

Texas uses the transactional approach to res judicata. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 630 (Tex.1992). Under this approach, res judicata precludes a second action by the parties and their privies[5] not only on matters actually litigated but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit. *Henry v. Chubb Lloyds Ins. Co. of Texas,* 895 S.W.2d 810, 813 (Tex.App.—Corpus Christi 1995, writ denied); *see Getty Oil Co. v. Insurance Co. of North America,* 845 S.W.2d 794, 798 (Tex.1992); *Texas Water Rights Comm. v. Crow Iron Works,* 582 S.W.2d 768, 771–72 (Tex.1979). A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation, without any regard to the form of action. *Barr,* 837 S.W.2d at 630. Any cause which arises out of those same facts should, if practicable, be litigated in the same suit. *Id.* Discovery should put a claimant on notice of any need for alternative pleading, and if success on one theory becomes doubtful during trial, a party is free to seek a trial amendment. *Id.*

In determining whether the suits arise out of the same subject matter, we consider and weigh whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a trial unit conforms to the parties' expectations or business usage. *Barr,* 837 S.W.2d at 631; *Lone Star Partners v. NationsBank Corp.,* 893 S.W.2d 593, 597 (Tex.App.—Texarkana 1994, writ denied).

In the prior case, Stemmons alleged that Lo–Vaca conspired with the Corpus Christi State National Bank (later called Corpus Christi National Bank) and Brinkerhoff to reject the price increase. Stemmons' conspiracy assertion arose from Ashford's rejection of the proposed price increase. Stemmons' pleadings in the first suit demonstrate that Stemmons believed the dispute was not merely contractual but that it involved a conspiracy between the bank, Brinkerhoff, and Lo–Vaca.

In the present case, appellants' position is that the conspiracy was not between Lo–Vaca and the bank but was between the bank, its trust officer Herb Helbig, Brinkerhoff, and Ashford, acting independently of Lo–Vaca. Appellants assert that res judicata does not bar the present suit because Ashford was self-dealing and not acting in the best interest of Lo–Vaca when he denied the price increase.[6]

In both the first suit and the present one the action causing injury was Lo–Vaca's rejection of the requested price increase

---

4. Summary judgment may be obtained upon a plea of res judicata. *Jones v. Nightingale,* 900 S.W.2d 87, 88 (Tex.App.—San Antonio 1995, writ ref'd); *Walker v. Sharpe,* 807 S.W.2d 442, 447 (Tex.App.—Corpus Christi 1991, no writ).

5. There is no generally prevailing definition of privity which can be automatically applied to all cases involving the doctrine of res judicata, and the determination of who are privies requires careful examination into the circumstances of each case as it arises. *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971). Privity is a word which expresses the idea that as to certain matters in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected

by the judgment with reference to interests involved in the action, as if they were parties. *Id.* Privity exists when the interests of a person are represented by a party to the prior action. *Id.*

6. Appellants rely on *Haralson v. E.F. Hutton Group, Inc.,* 919 F.2d 1014 (5th Cir.1990). *Haralson* held that if an agent induces his principal to breach a contract because of personal animus or greed, the agent may be held liable for tortiously interfering with contract. *Id.* at 1037. Appellants' argument misses the focus of the res judicata analysis. The issue is not whether Ashford could be liable for tortious interference with contract or business relations but whether appellants' causes of action should have been brought in the first suit.

through Ashford. In both suits, the plaintiffs alleged that Stemmons' request was rejected because of a conspiracy between Brinkerhoff and the bank or its officers. They differ only in that the latter action pleads that the individuals—Ashford, Helbig, and Brinkerhoff—received personal financial gain from Lo-Vaca's refusal to increase the price of Stemmons's gas. We hold that appellants' claims in the present suit involve the same subject matter as the prior suit.

The summary judgment proof in the present case, like the pleadings from the first suit, shows that Stemmons, before the trial of the prior case, suspected that there was a conspiracy between Brinkerhoff, the bank, and Lo-Vaca.[7] The summary judgment proof shows that Ashford, without regard to whether he was self-dealing, acted in his capacity as Lo-Vaca's Vice-President when he rejected the proposed price increase.

All of the appellants are either privies or successors of Stemmons. Appellant Beeman is a successor who obtained her interest in the present suit through Stemmons. The other appellants or their predecessors obtained their interest in the well through Stemmons, for it was Stemmons who operated the gas well and was the only person who had any contractual relationship with Lo-Vaca. Stemmons' act of selling for the other appellants (or predecessors in interest) made him their agent. *See Johnston v. American Cometra, Inc.*, 837 S.W.2d 711, 715–16 (Tex. App.—Austin 1992, writ denied).

Furthermore, all of the defendants in the present case are privies of Lo-Vaca, which had an interest in the first suit in demonstrating that no conspiracy existed between it, its officers, the bank, and Brinkerhoff.[8]

Since res judicata precludes a second action by the parties and their privies not only on matters actually litigated but also on causes of action which arise out of the same subject matter and which might have been litigated in the first suit, we hold that res judicata bars appellants' present suit. Point one is overruled.

By point two, appellants allege that the trial court erred in granting appellees' objections to appellants' summary judgment proof after the summary judgment was granted. The record shows that the trial court granted appellees' summary judgment on August 12, 1993. On that same day, appellees filed objections to appellants' summary judgment evidence. After appellants filed a motion for rehearing, the trial court entered an order granting appellees' objections to appellants' summary judgment evidence, stating that the objected-to proof was not considered. The trial court further denied the motion for rehearing. Appellants now allege the trial court erred in ruling on appellees' objections. We do not find this point dispositive. Even if appellee's motion had not been granted, and if the trial court had considered the objected-to proof, appellants' present action would still be barred by res judicata. Accordingly, point two is overruled.

The judgment of the trial court is affirmed.

TED M. AKIN, J. (Assigned), not participating.

---

7. Any tort liability of Lo-Vaca or the bank would have been derivative of Ashford's or Helbig's conduct.

8. The party asserting res judicata need not have been a party to the first suit. *Eagle Properties Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991).