**Ben S. LANG, et al, Appellants,**

v.

**CITY OF NACOGDOCHES,**
**et al, Appellees.**

No. 12–94–00249–CV.

Court of Appeals of Texas,
Tyler.

March 27, 1997.

■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■

Sean W. Hester, Tyler, for appellants.

Catherine L. Kyle, James S. Ludlum, Austin, Tom D. Rorie, Nacogdoches, for appellees.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

## OPINION AFTER MOTIONS FOR REHEARING

HADDEN, Justice.

Appellants, Ben S. Lang and his wife, Marjorie S. Lang, and Appellee, Mary Jo Shepherd, have filed motions for rehearing. We overrule the motions, but for clarification our original opinion dated January 31, 1997 is withdrawn and the following opinion substituted:

This is an appeal of a summary judgment. Ben S. Lang and his wife, Marjorie S. Lang ("Ben" and "Marjorie"), brought suit against William H. Lang and his wife, Ethelyne Lang ("William" and "Ethelyne," and sometimes called the "Lang Defendants"), the City of Nacogdoches ("the City"), Nacogdoches Police Chief John Walton ("Chief Walton"), Nacogdoches Police Officers Tommy Hinton and Eddie Upshaw ("Hinton" and "Upshaw"), the County of Nacogdoches ("the County"), Nacogdoches County Sheriff Joe Evans ("Sheriff Evans"), and Nacogdoches County Jail employee Mary Jo Shepherd ("Shepherd") (sometimes collectively called the "Nacogdoches Defendants") claiming malicious prosecution, intentional infliction of emotional distress, and various violations of their civil rights arising out of an incident whereby they were arrested. Motions for summary judgment were granted as to all defendants. Ben and Marjorie appeal to this Court assigning four points of error with several subpoints. We will **affirm in part and reverse and remand in part.**

### BACKGROUND

The record reflects that Ben and William were brothers. At the time of the incidents herein described, their mother, Vira Lang ("Vira"), was 91 years of age and resided in her home in Nacogdoches, Texas. William also resided in Nacogdoches, Texas; howev-

er, Ben resided in San Antonio, Texas, but he and Marjorie occasionally traveled to Nacogdoches to visit Vira. Because of Vira's advanced age, William was entrusted by Vira to collect and manage her monthly social security checks and other funds. After several years under this arrangement, a dispute arose between Ben and William regarding the care of Vira and the handling of her funds. Ben began to investigate into the matter, and an atmosphere of mutual distrust arose between the brothers.

According to the allegations of William, Vira began to complain to him that she was being harassed by Ben and Marjorie, and that she did not want them bothering her anymore. William, therefore, advised Ben not to go on her premises and visit Vira without first contacting him. Vira also gave William her power of attorney authorizing him to file complaints against trespassers. A portion of the power of attorney reads as follows:

KNOW ALL MEN BY THESE PRESENTS:

That VIRA LANG of Nacogdoches, County of Nacogdoches, and State of Texas has this day Made, Constituted and Appointed and by these presents does Make, Constitute and Appoint my son, WILLIAM H. LANG, of 623 Tower Road, Nacogdoches, in the County of Nacogdoches, and State of Texas, true and lawful Attorney for and in my name, place and stead, to exercise, do or perform any act, right, power, duty, or obligation whatsoever that I now have or may acquire the legal right, power or capacity to exercise, do, or perform in connection with, arising out of, or relating to the filing or prosecution of any complaint in my behalf which might arise from trespass, harassment, threat, disorderly conduct, simple assault or any other misdemeanor which might occur on or about my property as might effect me or any other member of my family, limited to the jurisdiction of the City of Nacogdoches, Texas Municipal Court or Nacogdoches County Court at Law.

On February 4, 1990, without William's permission, Ben and Marjorie drove to Nac-

ogdoches and visited with Vira at her home for approximately two hours. When they left, Vira called William to inform him that Ben and Marjorie were in town, had been at her home, and were disturbing her. According to William, he took no action at that time, hoping Ben and Marjorie would leave town. The next morning, Ben and Marjorie again went to see Vira at her home. Upon learning of their return, William called the Nacogdoches Police Department. Officers Hinton and Upshaw met William and Ethelyne at Vira's home. William advised the officers that Ben and Marjorie were not supposed to be on the premises and showed the officers the power of attorney. William told Officer Hinton that Ben and Marjorie had been told not to come upon the premises of Vira, and that he wanted to file charges against Ben and Marjorie for criminal trespass. Hinton called his police department headquarters and discussed this matter with the desk sergeant. The officers placed Ben and Marjorie under arrest, but allowed them to follow the officers in their own car to the county jail. William thereafter signed a complaint against them for criminal trespass. Marjorie was released on bond around 6:30 p.m. the same day, and Ben was released on bond the following morning.

Ben and Marjorie retained a Nacogdoches attorney to represent them in connection with the criminal charges, but nothing transpired until the charges were dismissed on May 21, 1990. Although Ben and Marjorie were in regular contact with their attorney, it was not until December 5, 1991, that they discovered that the pending charges against them had been dismissed. Suit was then filed by Ben and Marjorie on February 3, 1992. They filed an amended petition on June 28, 1993, to include civil rights charges pursuant to 42 U.S.C. § 1983 (1981). All defendants filed motions for summary judgment based on the applicable statutes of limitations, probable cause, and official immunity. The trial court granted summary judgment as to all defendants.

In their first point of error, Ben and Marjorie complain generally that the court erred in granting the motions for summary judgment. Point of error two asserts more spe-

cifically that the court erred in granting the motion for summary judgment in favor of the Nacogdoches Defendants because: 1) the statute of limitations on malicious prosecution had been tolled until Ben and Marjorie discovered the charges against them had been dismissed; 2) Ben and Marjorie's claims under the Federal Civil Rights Act 42 U.S.C. § 1983 (1981) were not barred by limitations; and 3) a fact question existed as to whether the Nacogdoches Defendants were entitled to immunity from suit, thus precluding summary judgment on this issue. Point of error three asserts that the court erred in granting the motion for summary judgment in favor of the Lang Defendants because: 1) the statute of limitations for malicious prosecution had been tolled until Ben and Marjorie discovered the charges against them had been dismissed; 2) Ben and Marjorie's claim for intentional infliction of emotional distress was not time barred because it was separate and distinct from their claim for malicious prosecution, and was not subject to the same period of limitations; 3) the summary judgment evidence created a fact issue as to Ethelyne's involvement in the incident giving rise to the suit; and 4) the affidavit of William was defective. Point of error four asserts that the trial court erred in signing a "general" order granting the motions for summary judgment over Ben and Marjorie's objections. We will address all four points together.

### STANDARD OF REVIEW

■ The function of summary judgment is to "eliminate patently unmeritorious claims and untenable defenses." *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Mayhew v. Town of Sunnyvale*, 774 S.W.2d 284, 286 (Tex.App.—Dallas 1989, writ denied), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1049 (1991). The purpose of allowing summary judgment is to "provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact." *Mayhew*, 774 S.W.2d at 287.

■ The standard for appellate review of a summary judgment in favor of a defendant is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984). The court did not specify the grounds upon which it granted summary judgment on each of the causes of action, and therefore summary judgment will be affirmed if any of the theories advanced are meritorious. *Insurance Co. of N. Am. v. Security Ins. Co.*, 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ). We will review the summary judgment in light of these admonitions.

### MALICIOUS PROSECUTION

■ In their motions for summary judgment, all defendants alleged, *inter alia*, that Ben's and Marjorie's cause of action for malicious prosecution was time barred because suit for malicious prosecution must be brought within one year after the cause of action accrued. The elements of a cause of action for malicious prosecution are outlined in *Thomas v. Cisneros*, 596 S.W.2d 313, 316 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.), and include the termination of the criminal prosecution in favor of the plaintiff. Limitations begin to run when the prosecution ends, and suit for malicious prosecution must be filed within one year after the cause of action accrued. TEX.CIV.PRAC. & REM.CODE ANN. § 16.002 (Vernon 1986 & Supp.1996). *Patrick v. Howard*, 904 S.W.2d 941, 943 (Tex. App.—Austin 1995, n.w.h.); *McHenry v. Tom Thumb Page Drug Stores*, 696 S.W.2d 664, 666 (Tex.App.—Dallas 1985, writ denied); *Cisneros*, 596 S.W.2d at 316.

In the instant case, the underlying criminal action was dismissed on May 21, 1990; thus, Ben and Marjorie's cause of action for malicious prosecution accrued on that date. William and Ethelyne argue that the malicious prosecution cause of action was time barred since suit was not filed until February 3, 1992. Ben and Marjorie assert, however, that under the "discovery rule" the statute of limitations was tolled until December 5, 1991, when their attorney informed them that the case was favorably terminated by the dismissal. They contend that they exercised reasonable diligence to discover the status of the charges by repeatedly checking with their attorney and that they believed the charges were still pending during that time. Because of that effort, they argue that they are entitled to the benefit of the "discovery rule," as set forth in *Willis v. Maverick,* 760 S.W.2d 642, 647 (Tex.1988) and *Weaver v. Witt,* 561 S.W.2d 792, 793 (Tex.1977).

The purpose of the statutes of limitations is to compel the assertion of claims within a reasonable period while the evidence is fresh in the minds of the parties and witnesses. *Price v. Anderson,* 522 S.W.2d 690, 692 (Tex.1975); *Gaddis v. Smith,* 417 S.W.2d 577, 578 (Tex.1967). The discovery rule exception defers accrual of the cause of action until the plaintiff knew, or by exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *Trinity River Auth. v. URS Consultants,* 889 S.W.2d 259, 262 (Tex.1994); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex. 1990); *Patrick,* 904 S.W.2d at 944. The discovery rule, in application, proves to be a very limited exception to statutes of limitations. In *Willis* and *Weaver,* the Texas Supreme Court applied the discovery rule to a legal malpractice case and a medical malpractice case, respectively, because of special fiduciary relationships which further justify the imposition of the discovery rule. It has also adopted the discovery rule in other cases in which it is difficult for the injured party to learn of the negligence or omission. *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex.1976) (discovery rule applicable to false credit report); *Wise v. Anderson,* 163 Tex. 608, 359 S.W.2d 876 (1962) (discovery rule applicable to actionable fraud). Citing *Willis,* the Tex-

as Supreme Court has stated that the discovery rule exception should be permitted only in circumstances where "it is difficult for the injured party to learn of the negligent act or omission." *Computer Assocs. Int'l. Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1994).

The matters disclosed in public records filed in the county courthouse are not such circumstances where it is difficult for the injured party to learn of the negligence. In *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex. 1981), the Texas Supreme Court held that a person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records, and that constructive notice in law creates an irrebuttable presumption of actual notice. Several courts of appeals have followed *Mooney,* and have concluded that interested parties are charged with constructive notice of the contents of documents recorded in the public records of the county. *McMeens v. Pease,* 878 S.W.2d 185 (Tex.App.—Corpus Christi 1994, writ denied) (parties are charged with constructive notice of a recorded deed); *Barfield v. Holland,* 844 S.W.2d 759 (Tex.App.—Tyler 1992, writ denied) (parties had constructive notice of all information contained in recorded documents in chain of title); *Noble Exploration v. Nixon Drilling Co. Inc.,* 794 S.W.2d 589 (Tex.App.—Austin 1990, no writ) (party to contract is charged with constructive notice of the actual knowledge that could have been acquired by examining public records); *Veltmann v. Damon,* 696 S.W.2d 241 (Tex.App.—San Antonio 1985), *rev'd in part,* 701 S.W.2d 247 (Tex. 1985) (Texas law is well settled that "a person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records").

We conclude that the discovery rule is inapplicable to the instant case since Ben and Marjorie are charged with constructive notice of what could have been known by an examination of the records. It is undisputed that the documents showing the favorable disposition of the criminal case against them were a matter of public record, and that they or their attorney could have discovered the dismissal by examining the public records. Accordingly, we hold that inasmuch as Ben

and Marjorie failed to bring suit for malicious prosecution within one year after their cause of action accrued, the trial court was correct in granting the summary judgment on the basis that their suit was barred by limitations.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 Ben and Marjorie also alleged that William and Ethelyne were liable for intentional infliction of emotional distress arising from their arrests. In response, William and Ethelene assert that the intentional infliction of emotional distress allegations by Ben and Marjorie were raised merely to avoid the application of the one-year statute of limitations imposed in malicious prosecution cases. They argue that the alleged intentional infliction of emotional distress was merely another form of malicious prosecution in disguise and should be barred by the one-year statute of limitations. We do not agree. The Texas Supreme Court has recognized the tort of intentional infliction of emotional distress, as set forth in Section 46(1) of the Restatement (Second) of Torts (1965). *Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993). Moreover, the joinder of more than one cause of action arising out of the same transaction is encouraged under Rule 51 of the Texas Rules of Civil Procedure. More than one cause of action may be asserted out of the same factual allegations. *E.g., Massey v. Massey,* 807 S.W.2d 391 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (cause of action by wife for infliction of emotional distress could be asserted in divorce suit where divorce and tort suit involve same facts and parties). Indeed, causes of action which arise out of the same transaction but are not raised may be barred by the doctrine of *res judicata. See Jonalstem, Ltd. v. Corpus Christi Nat'l Bank,* 923 S.W.2d 701, 704 (Tex.App.—Corpus Christi 1996, n.w.h.). We conclude, therefore, that Ben's and Marjorie's cause of action for intentional infliction of emotional distress is a separate cause of action which is not time barred by the one-year statute of limitations applicable to malicious prosecution claims.

 Nevertheless, the summary judgment by the trial court on the separate cause of intentional infliction of emotional distress is supported on other grounds. The elements of intentional infliction of emotional distress are: 1) the defendant acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) the actions of the defendant caused the plaintiff emotional distress; and 4) the emotional distress suffered by the plaintiff was severe. *Wornick Co. v. Casas,* 856 S.W.2d 732 (Tex.1993); *Tidelands Automobile Club v. Walters,* 699 S.W.2d 939, 942–44 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). In *Wornick,* the Texas Supreme Court described the outrageous conduct element as that which "goes beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized society." *Wornick,* 856 S.W.2d at 734, *citing* Restatement (Second) of Torts § 46 (1965). According to *Wornick,* it is for the court to determine, in the first instance, whether the conduct may reasonably be regarded as so extreme and outrageous so as to permit recovery. *Wornick,* 856 S.W.2d at 734; *see also Wyatt v. Kroger Co.,* 891 S.W.2d 749, 754 (Tex.App.—Fort Worth 1994, writ denied).

 The summary judgment evidence established that William and Ethelyne's conduct was not "outrageous," as that term is defined in *Wornick.* Vira had executed a power of attorney authorizing William to file criminal complaints against anyone who criminally trespassed on the premises of his mother, an elderly person who needed assistance and care. Ben and Marjorie had been previously warned by William not to come upon the premises of Vira without his permission. On the day of their arrest, Ben and Marjorie were on the premises without William's permission. Based upon his understanding of his rights and duties under the circumstances, William reported the situation to the police and signed a complaint against Ben and Marjorie. As a result, Ben and Marjorie were arrested for criminal trespass.

 It might be considered extreme for someone to have his own brother arrested while visiting their mother, and Ben and Marjorie may have been subjected to distress, embarrassment, trouble and expense because of the arrest. However, because

citizens have a duty to report criminal activity to the police, we cannot say that filing the criminal complaint under the circumstances in this case constitutes outrageous behavior. *Carswell v. Southwestern Bell Telephone Co.,* 449 S.W.2d 805, 816 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). To characterize the conduct of William as extreme and outrageous conduct would tend to stultify the reporting of possible crimes which is not favored as a matter of policy. *Ada Oil Co. v. Dillaberry,* 440 S.W.2d 902 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd w.o.j.). As a matter of policy, the reporting of criminal conduct should be encouraged. *Browning–Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288, 290–91 (Tex.1994). There is no liability for intentional infliction of emotional distress where an actor does no more than insist on his legal rights. *McClendon v. Ingersoll–Rand Co.,* 757 S.W.2d 816, 820 (Tex.App.—Houston [14th Dist.] 1988), *aff'd,* 807 S.W.2d 577 (Tex.1991).

The summary judgment evidence presented by William shows that nothing more was done by him and Ethelyne other than what they were entitled to do under the circumstances. Any damages suffered by Ben and Marjorie can be characterized as *damnum absque injuria. Bondies v. Glenn,* 119 S.W.2d 1095, 1098 (Tex.Civ.App.—Eastland 1938, no writ). Accordingly, we conclude that the conduct of William and Ethylene may not reasonably be regarded as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress. Thus, the trial court did not commit error in granting summary judgment on their claim.

### ETHYLENE'S INVOLVEMENT

Ben and Marjorie further complain that summary judgment should not have been granted as to Ethelyne because the evidence showed that she was directly involved in the incidents giving rise to the causes of action for malicious prosecution and intentional infliction of emotional distress. The conclusions which we have reached above adequately address that issue. Summary judgment was properly granted on those two causes of actions in favor of Ethelyne as well as William.

### DEFECTIVE AFFIDAVIT

■ Additionally, Ben and Marjorie assert that the summary judgment affidavit of William was defective because it did not state that the facts contained therein are true and correct. However, the failure of the affiant to state the facts in his affidavits are within his personal knowledge and true and correct does not necessarily make the affidavit fatally defective. *Bloyed v. General Motors Corp.,* 881 S.W.2d 422, 434 (Tex.App.—Texarkana 1994) *aff'd,* 916 S.W.2d 949 (Tex. 1996); *Krueger v. Gol,* 787 S.W.2d 138, 141 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Southwest Park Outpatient Surgery, Ltd. v. Chandler Leasing Div.,* 572 S.W.2d 51, 52 (Tex.App.—Houston [1st Dist.] 1978, no writ). Furthermore, Ben and Marjorie's brief contains no citations to any authorities which support this point of error. Mere assertion of error without authority waives error. *See* TEX.R.APP.P. 74(f). While it may not be appropriate to dispose of an entire appeal because of briefing inadequacies, one or more points of error may be waived on appeal when the remainder of the case has been presented to the court. *See Inpetco, Inc. v. Texas American Bank/Houston N.A.,* 729 S.W.2d 300 (Tex.1987).

### SECTION 1983 CAUSES OF ACTION AGAINST CITY, COUNTY, CHIEF WALTON, AND SHERIFF EVANS

The Nacogdoches Defendants assert that Ben's and Marjorie's alleged cause of action against them under 42 U.S.C. § 1983 was barred by the two-year statute of limitations because it was alleged for the first time over two years from the date the cause of action accrued. Ben and Marjorie were arrested February 5, 1990, which was the date their cause of action accrued. Ben and Marjorie filed their Plaintiffs' Original Petition on February 3, 1992, which was within the two-year statute of limitations, but they did not assert a cause of action under Section 1983 in that pleading. It was not until June 28, 1993, when Ben and Marjorie filed their First Amended Original Petition that they specifically included a claim under Section 1983.

Ben and Marjorie argue that the claim is not barred by limitations since they raised facts in their Plaintiffs' Original Petition which would give rise to a Section 1983 violation. In support of their position, they cite Section 16.068 of the Texas Civil Practice and Remedies Code, which provides:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is *not* subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct or different transaction or occurrence.

Tex.Civ. & Prac.Rem.Code.Ann. § 16.068 (Vernon 1986) (emphasis added).

The relevant limitation period is two years for an action brought pursuant to 42 U.S.C. § 1983 (1981). *See Henson–El v. Rogers,* 923 F.2d 51 (5th Cir.), *cert. denied,* 501 U.S. 1235, 111 S.Ct. 2863, 115 L.Ed.2d 1030 (1991). After carefully examining Ben and Marjorie's Original Petition and their First Amended Original Petition, we conclude that their Section 1983 cause of action against the City, the County, Chief Walton and Sheriff Evans was time-barred because the essential elements of the cause of action were not alleged in the facts of the Original Petition.

The contours of liability of local governments under Section 1983 have been set out by the U.S. Supreme Court in *Monell v. City of New York Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In that case, the Supreme Court concluded that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. The court went on to state that Section 1983 does not impose liability vicariously on governing bodies solely on the basis of existence of an employer/employee relationship with a tortfeasor, and that a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. Instead, it is when "execution of a government's policy or custom, whether made by its lawmaker or by those whose edicts or acts may fairly be said to represent official policy inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. One may establish a violation of Section 1983 if the constitutional infringement arises from a persistent, widespread custom or practice of municipal officials or employees which, although not an authorized, officially adopted or promulgated policy, is so common and well-settled as to constitute a custom which fairly represents governmental policy. However, no liability attaches for a single act or occurrence since such single occurrence does not constitute a widespread custom or practice. An isolated event, such as one forming the basis of the instant litigation, does not establish a widespread custom or practice. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Rodriguez v. Avita,* 871 F.2d 552 (5th Cir.1989), *cert. denied,* 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989). *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38.

It is also well settled that supervisory officials, such as Chief Walton and Sheriff Evans, cannot be held vicariously liable for their subordinates' actions under Section 1983. *See Monell,* 436 U.S. at 691–95, 98 S.Ct. at 2036–38; *Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir.1985) (*per curiam*). Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury. *See Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir.1987); *see also Baker v. Putnal,* 75 F.3d 190 (5th Cir.1996); *Grandstaff v. City of Borger,* 767 F.2d 161, 169–70 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). There must be some connection between the officials' actions and the alleged constitutional violation. *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986).

The rule which has been followed in Texas is that a municipality or a non-participating official can be held liable un-

der Section 1983 for torts of constitutional dimensions inflicted by its personnel if it is committed pursuant to official policy or custom. They cannot be held liable for torts that do not involve deprivation of constitutional rights or are based solely on the doctrine of *respondeat superior*. *City of Amarillo v. Langley*, 651 S.W.2d 906, 913 (Tex.App.—Amarillo 1983, no writ). The proper inquiry, therefore, is whether: 1) there was a municipal policy or custom that, 2) when executed or implemented, 3) produced a constitutional tort, 4) causing injuries to the plaintiffs. These elements of a 1983 cause of action must be *alleged* and proven. *See Mitchell v. Amarillo Hosp. Dist.*, 855 S.W.2d 857 (Tex.App.—Amarillo 1993, writ denied), *cert. denied,* 513 U.S. 1000, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994) (special exception granted and claims dismissed for failure to allege elements of cause of action under Section 1983).

A close examination of Plaintiffs' Original Petition reveals that they did not allege facts showing that an unconstitutional *policy* or *custom* was being implemented or executed by the City or the County, which may have caused the alleged unconstitutional tort and resulting injuries. The petition also does not allege that Chief Walton or Sheriff Evans affirmatively participated in acts that caused constitutional deprivation, or that they implemented unconstitutional policies that causally resulted in their injury. It was more than two years after the incident in question that, for the first time, the policy and custom elements of the Section 1983 cause of action were alleged by Ben and Marjorie. Based on *Monell* and the other authorities cited above, we conclude that the policy and custom elements of the Section 1983 cause of action alleged by Ben and Marjorie against the City, the County, Chief Walton and Sheriff Evans in their First Amended Original Petition constituted a wholly new, distinct or different transaction or occurrence. Accordingly, Ben and Marjorie's Section 1983 claims against the City, the County, Chief Walton, and Sheriff Evans were barred by the two-year statute of limitations.

Ben and Marjorie further allege that Chief Walton and Sheriff Evans are liable under Section 1983 for their injuries because they breached their duty to train, supervise, and control the actions of Hinton, Upshaw, and Shepherd. They claim that such failure led to the deprivation of their constitutional rights. As discussed above, for Chief Walton or Sheriff Evans to be held liable under Section 1983, there must be some connection between their acts or omissions and the alleged constitutional violation. *Hinshaw,* 785 F.2d at 1263. The plaintiff must allege that: (1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference. *Baker,* 75 F.3d at 199; *Hinshaw,* 785 F.2d at 1263. Again, Ben and Marjorie failed to allege any of these elements of their cause of action until over two years after the incident in question. Thus, their Section 1983 claim against Chief Walton and Sheriff Evans for failure to train, supervise, and control is also barred by the two-year statute of limitations.

We note that sufficient allegations of wrongful conduct were contained in the Plaintiffs' Original Petition to state a Section 1983 cause of action against Hinton, Upshaw, and Shepherd, and thus were not barred by the two-year statute of limitations. However, as discussed below, the trial court was correct in granting summary judgment in favor of Hinton and Upshaw on other grounds.

### SECTION 1983 CLAIM AGAINST OFFICERS HINTON AND UPSHAW AND THEIR DEFENSE OF QUALIFIED IMMUNITY

Next, Ben and Marjorie assert that their arrests on February 5, 1990 violated their Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure. Hinton and Upshaw contend that they had probable cause to arrest them, and thus, were entitled to qualified immunity under federal law. In *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995), the court reviewed official qualified immunity under fed-

eral law, and made the following observations in the context of an illegal arrest claim:

> Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994). The protection afforded by the defense is an "immunity from suit, not simply immunity from liability." *Id.* (quoting *Geter v. Fortenberry,* 849 F.2d 1550, 1552 (5th Cir.1988)). Consequently, the immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability. *See Hunter v. Bryant,* 502 U.S. 224, 226, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

In suits alleging illegal arrest, the qualified immunity determination turns on whether a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed. *Babb,* 33 F.3d at 477. Even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Babb,* 33 F.3d at 477. The qualified immunity defense " 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). Thus, if officers of reasonable competence *could* disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized. *Babb,* 33 F.3d at 477.

Indeed, "the Constitution does not guarantee that only the guilty will be arrested. If it did, Section 1983 would provide a cause of action for every defendant acquitted." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

Under the totality of the circumstances at the time of Ben and Marjorie's arrests the evidence shows that Officers Hinton and Upshaw could have reasonably believed they had probable cause to make the arrests for criminal trespass, and that such arrests were lawful. Officer Hinton examined the power of attorney which William claimed gave him the authority to press charges for criminal trespass. In addition, William told Officer Hinton that he had warned Ben and Marjorie that they were not to come upon the premises, and William also informed Officer Hinton that he was willing to press charges. Officers Hinton and Upshaw were entitled to deduce from these facts that Ben and Marjorie would not leave the premises voluntarily. Under the facts of this case, we conclude that Officers Hinton and Upshaw had sufficient probable cause to arrest Ben and Marjorie, and were, therefore, entitled to qualified immunity. Consequently, the lower court properly granted summary judgment on this issue.

### FALSE ARREST AND IMPRISONMENT CLAIMS AGAINST OFFICERS HINTON AND UPSHAW AND THEIR DEFENSE OF QUALIFIED IMMUNITY

█ Ben and Marjorie also allege that Hinton and Upshaw were liable for false arrest and imprisonment. Hinton and Upshaw assert that, in addition to their claims for qualified immunity under federal law, they are also entitled to qualified immunity under Texas common law. The Texas Supreme Court recently re-examined the question of qualified immunity in *City of Lancaster v. Chambers,* 883 S.W.2d 650 (Tex.1994). The court held that public officials are entitled to "immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *Lancaster,* 883 S.W.2d at 653. *See also Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994) (reaffirming the three prong test in *City of Lancaster* ). When deciding whether an officer is entitled to qualified immunity under state law, questions of an officer's negligence are immaterial. *Carpenter v. Barner,* 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied).

■ First, it is uncontested that Hinton and Upshaw were acting within the scope of their authority as police officers for the City. Secondly, it is clear that they were performing a discretionary duty since an officer exercises discretion when he decides whether to make an arrest and the manner of the arrest. *Vasquez v. Hernandez*, 844 S.W.2d 802, 804–5 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.). In Texas, a peace officer is authorized to arrest an offender without a warrant for any offense committed within the officer's presence. TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1977). Ben and Marjorie assert that the call made by Hinton to his desk sergeant was for instructions which took the matter out of the officers' discretion and, therefore, made the arrest a ministerial matter. However, Ben and Marjorie's summary judgment affidavits show no basis for such a claim. The summary judgment affidavits clearly indicate that the decision to arrest remained with Hinton and Upshaw. Therefore, we conclude that Hinton and Upshaw were performing discretionary duties in connection with the arrests.

■ The only remaining issue is whether Hinton and Upshaw were acting in good faith when they made the arrests. In false arrest cases, the question of good faith turns on whether the officer had probable cause to make the arrest. *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Cr.App.1989). Probable cause exists where the information known to the officer is sufficient to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. *Louis Antu & Bexar Co. v. Eddy*, 914 S.W.2d 166, 173 (Tex.App.—San Antonio 1995, no writ); *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Cr.App.1991).

In *City of Lancaster*, the Texas Supreme Court adopted an "objective legal reasonableness" test for the element of good faith in official immunity cases. *City of Lancaster*, 883 S.W.2d at 656. In that case, the court held that a police officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend a suspect outweighed a clear risk of harm to the public in continuing the pursuit. *Id.* This objective standard has been applied to other governmental officials claiming the affirmative defense of qualified immunity. *See City of Palestine v. Ramirez*, 925 S.W.2d 250, 253–54 (Tex.App.—Tyler 1996, no writ) (chief of police in an employment dispute); *Tarrant Co. v. Dobbins*, 919 S.W.2d 877, 882 (Tex.App.—Fort Worth 1996, writ requested) (performance of duties by county death investigator). However, in *Font v. Carr*, 867 S.W.2d 873, 879 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.), the Houston Court of Appeals applied a subjective standard to determine whether a public official acted in good faith in a bail bond matter. We have reviewed the summary judgment evidence as outlined above under both the objective and subjective good faith standards and conclude that Officers Hinton and Upshaw had sufficient probable cause to arrest Ben and Marjorie, and were, therefore, entitled to qualified immunity against Ben and Marjorie's false arrest and imprisonment claims. Accordingly, the lower court properly granted summary judgment on that issue.

## SECTION 1983 CLAIM AGAINST OFFICER SHEPHERD AND HER DEFENSE OF QUALIFIED IMMUNITY

■ We have previously disposed of all Section 1983 claims which Ben and Marjorie have alleged against the City, the County, Chief Walton, Sheriff Evans, and Officers Hinton and Upshaw. The only remaining Section 1983 claim is Marjorie's excessive force claim against Shepherd, and Shepherd's assertion of the affirmative defense of qualified immunity.

Marjorie alleged in her first amended petition that Shepherd, a jailer with the Nacogdoches County Sheriff's Department, used excessive force toward her in violation of her constitutional rights. In her summary judgment affidavit, Shepherd denied these allegations and stated that:

"At no time during booking did I hurt Mrs. Lang. I did everything in my power to make the process easier for her, and I was polite and courteous at all times.

. . .

"At no time did I exercise any excessive force toward either Marjorie Lang. . . .

In her summary judgment affidavit, Marjorie made allegations of excessive force and stated, in part, as follows:

"At the Nacogdoches County Jail, we were made to stand for over an hour and before we were placed in separate holding cells. This caused me severe pain and discomfort because I was suffering from a foot ailment and was on crutches at that time. When the County Jail Employee, Mary Joe Shepherd, did the initial body search of me, she used excessive force on me ... by pressing against my lumbar spine area where I had previously undergone delicate spinal surgery. I informed Ms. Shepherd at the very beginning that my back was sensitive and she would need to use extreme care in touching me on my back. I had a medical condition that warranted at least consideration on her part. No one responded to my cried [sic] for help.

. . .

"Sometime in the afternoon, I was brought out of the holding cell by Mary Jo Shepherd for processing. While she was photographing me in the side position, Ms. Shepherd used excessive force when I did not immediately respond to her demand to hold my head up higher even though I explained to her that I could not physically look up higher. Ms. Shepherd forced my head up and back, permanently injuring my neck and back, and causing me extreme pain resulting in the need for surgery on my neck and spinal area. When I cried out from the pain, Ms. Shepherd warned me that she could take me into the back of the jail where no one would hear my cries. I was then ordered to sit for the remainder of the afternoon into the evening on a wooden, hard-backed chair for a period of several hours.

At the outset, we must determine the law applicable to the instant case. The Supreme Court has clearly stated that the official's conduct must be measured with reference to the law as it existed at the time of the

incident, not the current law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1185 (5th Cir.1990). The alleged excessive force in the present case occurred on February 4, 1990. Thus, the law in effect at the time of Shepherd's conduct is set forth in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Graham*, the United States Supreme Court made it explicit that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach. *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. 386 at 396, 109 S.Ct. at 1872, 104 L.Ed.2d 443.

In *Johnson v. Morel*, 876 F.2d 477 (5th Cir.1989), the Fifth Circuit applied the Fourth Amendment "reasonableness" standard set forth in *Graham*, and adopted a three-part analysis for such excessive force claims.[1] That analysis is:

A plaintiff can thus prevail on a Constitutional excessive force claim only by proving each of these three elements: (1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. If any one of these elements fails, so too does the plaintiff's claim.

*Id.* at 480.

Making proper application of the test requires careful attention to the facts and cir-

---

1. In February 1992, the Supreme Court adopted a different standard to be applied in excessive force cases, which *is* not to be enforced retroactively. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Since Ben and Marjorie claim that the alleged conduct made the basis of this lawsuit occurred prior to February *1992*, the pre-*Hudson* standard of liability for excessive force claims applies.

cumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872.

Applying the test in *Morel*, it is clear from the summary judgment evidence that a genuine issue of fact exists as to each element of excessive force. Shepherd stated in her summary judgment evidence that she did not hurt Marjorie nor did she use excessive force at any time. But the incident described by Marjorie in her controverting affidavit disclosed a significant injury which resulted directly and only from the use of force by Shepherd. Her affidavit also shows that the force used was clearly excessive to the need of the moment, and that the excessiveness was objectively unreasonable. She stated that she appeared at the jail on crutches. She informed Shepherd of her infirm physical condition and asked her to use care. Nevertheless, during the photographing of Marjorie, Shepherd demanded that Marjorie hold her head higher. Although Marjorie explained that she could not do so because of her spinal condition, Shepherd forced her head up and back, allegedly causing extreme pain and the need for later surgery on her neck and spinal area. The evidence does not indicate that Marjorie posed a threat of harm to Shepherd, nor was there evidence of any need for split-second judgments to be made under tense, uncertain, or rapidly evolving circumstances in the midst of confusion.

Shepherd argues that Marjorie's claim fails to satisfy the second element of the excessive force test because her injury did not result "directly and only from" the officer's use of force and cites, among other cases, *Wells v. Bonner*, 45 F.3d 90 (5th Cir. 1995). In *Wells*, the plaintiff's shoulder was injured when he resisted arrest and was forcibly handcuffed. The court held that the injury did not result "directly and only" from the officers' use of force since it was an exacerbation of an old shoulder injury for which the plaintiff had previously undergone surgery. However, subsequent decisions have determined that the "directly and only" language in *Morel* was intended to distinguish between injuries resulting from *excessive* force and those resulting from the *justified* use of force. *Dunn v. Denk*, 54 F.3d 248, 251 (5th Cir.1995), *reh'g granted en banc and rev'd on other grounds*, 79 F.3d 401, 403 (5th Cir.1996). It was not intended to displace the rule that a tortfeasor takes his victim as he finds him or to immunize the exacerbation of a pre-existing condition. *Dunn*, 54 F.3d at 251. In *Wells*, the aggravation of the shoulder injury was allegedly caused by handcuffing Wells' hands behind his back, a justified use of force at the time of Wells' arrest. *Wells*, 45 F.3d at 92. However, the evidence in the instant case suggests that Marjorie's injury resulted from force used in a manner beyond that which was justified. Therefore, judging Shepherd's actions from the perspective of a reasonable officer present during the incident, a fact issue exists as to whether her conduct was excessive.

■■■■■ Shepherd answers Marjorie's Section 1983 claim of excessive force by asserting the affirmative defense of qualified immunity. Under federal law, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); *see also Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994). In *Harlow*, the Supreme Court discarded the "subjective" good faith test and adopted a test that focuses on the objective legal reasonableness of an official's acts. *Harlow*, 457 U.S. 800 at 819, 102 S.Ct. at 2739, 73 L.Ed.2d 396. Although *Harlow* involved the immunity of federal officials, the court expressly stated the same immunity standard would apply to Section 1983 actions against state officials. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738–39 n. 30. Thus, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken.

*Anderson v. Creighton,* 483 U.S. 635, 637, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

It was uncontested during the summary judgment proceedings and on appeal that Shepherd was acting within the scope of her authority as a county official. The issue of whether Shepherd was performing discretionary duties was addressed below, but was not raised on appeal. Therefore, we will not address those two issues but move to the inquiry of whether Shepherd violated a "clearly established law" of which a reasonable person would have known. Marjorie claims that Shepherd violated the Fourth Amendment's prohibition against unreasonable seizures of the person. The excessive force claim has been most properly characterized as one invoking the protections of the Fourth Amendment which guarantee citizens the right "to be secure in their persons ... against unreasonable seizures" of the person. *Graham,* 490 U.S. at 386, 109 S.Ct. at 1871. Thus, the law is clearly established that an unreasonable seizure violates the Fourth Amendment and is grounds for Section 1983 liability. *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Accordingly, Marjorie had a clearly established constitutional right to be free of excessive force while under arrest.

■ If the law is clearly established, the immunity defense should fail since a reasonably competent public official should know the law governing his conduct. *Harlow,* 457 U.S. at 818–819, 102 S.Ct. at 2738. Nothing in the summary judgment evidence indicates that Shepherd was unaware of Marjorie's Fourth Amendment rights, and facts were raised in Marjorie's affidavit which suggest that excessive force used against her was in violation of these rights. Thus, we conclude that Shepherd was not entitled to the affirmative defense of qualified immunity.

We sustain Ben and Marjorie's point of error two, subpoint C, which relates to the trial court's granting of summary judgment in favor of Shepherd.

## The "General" Order of the Court

■ In point of error four, Ben and Marjorie complain that the court erred in signing a "general" order granting the defendants' motions for summary judgment over their objections. Ben and Marjorie filed their objections to the proposed summary judgment submitted by the defendants, claiming that the proposed judgment was vague and ambiguous regarding the court's actual basis for granting the motions. However, Ben and Marjorie's argument under point of error four does not comply with the requirements of Rule 74(f), which states that the argument in the brief shall include: (1) a fair, condensed statement of the facts pertinent to such points ...; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. Tex.R.App.P. 74(f). Nevertheless, in the interest of justice, we will attempt to address the point.

The complained-of order recited the identity of all parties in the case, and stated that the court had considered all of the pleadings, the argument of counsel, and the summary judgment evidence. The order then stated that the trial court "finds that there was no genuine issue as to any material fact necessary to establish plaintiffs' claims." The order further concluded that "all defendants are therefore entitled to judgment as a matter of law on all issues before the court, ...." and that "... all defendants' motions for summary judgment are meritorious and should be, in all things, granted."

■ In a similar case, *Singleton v. LaCoure,* 712 S.W.2d 757 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), the appellate court concluded that a summary judgment: (1) which included the names of the parties in the heading, (2) which stated that the court had considered the pleadings, the arguments of counsel, and applicable law and facts, and (3) which stated finally that the motion should be granted satisfied the requirements of a judgment. *Singleton,* 712 S.W.2d at 761. Furthermore, when the trial court does not specify the specific grounds upon which it granted summary judgment, it is presumed that judgment was granted on all grounds raised by the moving party and it is then the burden of the non-moving party to show that each independent argument alleged in the motion was insufficient to sup-

port the trial court's order. *Insurance Co. Of N. Am. v. Security Ins. Co.*, 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ). Accordingly, we see no error in the general order in the instant case.

Additionally, Ben and Marjorie complain that the trial court signed the order without giving them a hearing on their objections. However, the record shows that their written objections were before the court when it signed the order, and Ben and Marjorie have not demonstrated how they ere harmed by not having a hearing. Any error, therefore, was harmless. TEX.R.APP.P. 81(b)(1).

### OTHER CAUSES OF ACTION NOT RAISED ON APPEAL

■■■■ Ben and Marjorie alleged several other causes of action in their trial pleadings, including negligence, assault and battery, and deliberate indifference to serious medical needs, which were addressed by the defendants in their motions for summary judgment. We may presume that summary judgment was granted against Ben and Marjorie on those causes of action as well. *See Insurance Co. Of N. Am.*, 790 S.W.2d at 410. However, Ben and Marjorie have not complained of the granting of summary judgment in those causes of action on appeal. A party does not preserve a complaint for appellate review unless the party asserts the complaint in a point of error and supports it by argument and authority in its brief; therefore, the causes of action will not be considered by this Court. *See Trinity Universal Ins. Co. v. Fidelity & Casualty Co. of New York*, 837 S.W.2d 202, 205 (Tex.App.— Dallas 1992, no writ).

### CONCLUSION

For the foregoing reasons, point of error two, subpoint C is sustained, insofar as it applies to Marjorie's claim of excessive force by Shepherd. All other points of error are overruled. The judgment of the trial court insofar as it granted summary judgment in favor of Shepherd on Marjorie's claim of excessive force is **reversed and remanded**; in all other respects, the judgment of the trial court is **affirmed**.